A09A1533. RAHMAAN v. DEKALB COUNTY et al.

(685 SE2d 472)

PHIPPS, Judge.

During a high speed chase, a patrol car driven by a DeKalb County Police Department officer collided with the fleeing suspect's car, causing the suspect's car to strike Cherise Rahmaan's car. In connection therewith, Rahmaan filed the instant personal injury suit against DeKalb County and the police officer, Gary Thull, in his personal and official capacities.[1] Thull was granted summary judgment in his personal capacity,[2] and that ruling is not at issue here. Contested in this appeal is the grant of summary judgment, based upon OCGA § 40-6-6 (d) (2), to the county and to the officer in his official capacity.[3] "[W]e review the trial court's grant of summary

---

[1] The suspect was also named as a defendant, but is not at issue in this appeal.

[2] See *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001) (doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity).

[3] In denying these defendants' prior motion for summary judgment based upon sovereign

judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact."[4] Because the record shows that summary judgment was not authorized, we reverse.

OCGA § 40-6-6 (d) (2) provides:

> When a law enforcement officer in a law enforcement vehicle is pursuing a fleeing suspect in another vehicle and the fleeing suspect damages any property or injures or kills any person during the pursuit, the law enforcement officer's pursuit shall not be the proximate cause or a contributing proximate cause of the damage, injury, or death caused by the fleeing suspect unless the law enforcement officer acted with reckless disregard for proper law enforcement procedures in the officer's decision to initiate or continue the pursuit. Where such reckless disregard exists, the pursuit may be found to constitute a proximate cause of the damage, injury, or death caused by the fleeing suspect, but the existence of such reckless disregard shall not in and of itself establish causation.

In seeking summary judgment based upon this Code provision, the defendants argued that Rahmaan had failed to show the requisite reckless disregard and thus proximate cause. The trial court ruled in the defendants' favor, finding no evidence that Thull had acted with reckless disregard for a proper law enforcement procedure.

In her deposition, Rahmaan described the underlying incident as follows. At about 10:00 p.m. on July 13, 2005, she was stopped at a red light at a four-way intersection. By the time the light turned green for her, she was hearing loud sirens and therefore remained stopped. She soon saw a Cadillac approaching the intersection by way of the cross street; it was traveling at a very high rate of speed and was being pursued by a police car. The police car advanced toward the side of the Cadillac, then "purposefully" rammed into the side, back portion of the Cadillac, causing the Cadillac to "fishtail" into her stationary car. The impact forced her car into a residential yard on the other side of the street. The chase had ended, and the

---

immunity, the trial court concluded that DeKalb County had waived such immunity to the extent of any insurance policy under the ambit of the statute, noting that defense counsel had represented that such an insurance policy did exist and had been provided to the plaintiff. See id. at 126 (counties may purchase liability insurance to cover damages arising from the use of any motor vehicle, providing a limited waiver of their sovereign or governmental immunity up to the amount of the insurance purchased).

[4] *Dept. of Public Safety v. Davis*, 289 Ga. App. 21 (656 SE2d 178) (2007), aff'd, 285 Ga. 203 (676 SE2d 1) (2009).

officers apprehended the suspect. Rahmaan recounted that numerous police cars from various jurisdictions quickly arrived on the scene, and Thull was "happily excited, saying we got him and that they had been chasing him for a long time throughout the city."

Rahmaan further described the surrounding area. She recalled that not only had she been stopped directly at the intersection, but there also were people walking alongside the streets, individuals on residential porches, and children playing outside. Rahmaan asserted that Thull had nevertheless engaged in what she believed was called a precision immobilization technique (PIT) maneuver.

In his deposition, Thull explained that a PIT maneuver is "done by matching the driver that you're chasing, his speed. You match their speed. You take whatever side you're going to do the technique on. You're matching their speed and you bump their back left or right quarter panel and you give it a quarter turn and that's it." The officer was asked, "[W]hat happens when you do that?" Thull answered, "The driver loses control of the car."

However, Thull denied having employed a PIT maneuver during the chase. He testified that such a maneuver was neither taught nor allowed by DeKalb County. His version of how the collision occurred differed from Rahmaan's. Thull recounted that, as the Cadillac was speeding toward the red light at the intersection, he tried "to block the intersection for anyone coming through who is unaware of what's going on." As he was overtaking the Cadillac, Thull recalled, "[the Cadillac] comes over. When he comes over, I noticed him almost at the door and could not stop, could not avoid him. He bounced off me." The officer testified that he had been instructed to block that intersection, and accordingly, he had been trying to "stop innocent people from coming through the intersection who had no idea of what's getting ready to come through the intersection. That was my point, to get up there and block off the intersection."

On appeal, Rahmaan challenges the trial court's finding that there was no evidence that Thull had acted with reckless disregard for a proper law enforcement procedure. She points to Thull's deposition testimony that the following policies, among others, applied to DeKalb County police officers:

> During pursuit, a safe distance shall be maintained between both cars, enabling the pursuing officer to duplicate any sudden turns and lessen the possibility of collision in the event of a sudden stop. Deliberate physical contact between vehicles at any time would not be justified, except as required at roadblocks and under the orders pertaining thereto.

> Because of the extreme and obvious dangers inherent in the use of roadblocks in pursuit situations, it is the policy of the police department that the use of roadblocks to apprehend wanted suspects will not be employed when it is apparent that innocent persons would be endangered.

Rahmaan also cites her deposition testimony as to how the collision occurred.

Although Thull's version of how the collision occurred differed from Rahmaan's, we agree with Rahmaan that the evidence, viewed in her favor, showed that she was stopped at an intersection within a residential neighborhood at a time when it was apparent that there were innocent bystanders; that in pursuing the suspect, Thull did not maintain a safe distance between his and the suspect's car, but purposefully rammed his car into the vehicle of the fleeing suspect; that this impact caused the suspect's car to strike her car before the suspect's car came to a stop; and that the suspect was thereafter apprehended. Thull's deposition testimony showed that DeKalb County had a policy prohibiting an officer in pursuit of a suspect from deliberately making physical contact between their vehicles, except under certain circumstances. Under this record, a jury would be authorized to find that the circumstances of this case did not fall within an exception.

The gist of the defendants' argument was that, although Rahmaan had labeled what she had seen a PIT maneuver, she could not identify any DeKalb County policy discussing a driving pattern as a "PIT maneuver" and therefore she could not substantiate her assertions that Thull had performed a PIT maneuver and that a PIT maneuver was an improper law enforcement procedure. But even if mere street parlance, a "PIT maneuver," as described by Thull, included the pursuing officer making deliberate contact between his vehicle and that of the fleeing suspect; Thull further stated that such a maneuver was not allowed by DeKalb County. More importantly, as Rahmaan's lawyer argued during the summary judgment hearing, "[w]hether it was a PIT maneuver, whether it was a bump maneuver, or a flip-over maneuver," under Rahmaan's version of events,[5] "[Thull] intentionally rammed the fleeing suspect."

Because there was evidence from which a jury could find that Thull acted with reckless disregard for proper law enforcement procedures in his decision to continue the pursuit, which may be found to constitute a proximate cause of Rahmaan's damages, the

---

[5] The record also contains deposition testimony of the individual who lived at the residence where Rahmaan's car came to rest after the impact. His version of events was similar to Rahmaan's.

grant of summary judgment under OCGA § 40-6-6 (d) (2) was error.[6]
*Judgment reversed. Smith, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 21, 2009.

*Divida Gude*, for appellant.
*James E. Dearing, Jr., Lynn W. Beck*, for appellees.

---

[6] See *Lang v. Becham*, 243 Ga. App. 132, 134 (530 SE2d 746) (2000) (where there was some evidence that the officer acted with reckless disregard for proper law enforcement procedures at the time of the incident, summary judgment was not authorized), aff'd, *Cameron*, supra at 129 (4) (construed most favorably toward plaintiff, evidence showed genuine issue of material fact concerning whether officer acted in reckless disregard for proper law enforcement procedure in his decision to continue the pursuit of suspect); see generally *Phillips v. Hanse*, 281 Ga. 133, 136 (2) (637 SE2d 11) (2006) (acknowledging that evidence of law enforcement officer's bumping his vehicle into a fleeing vehicle during a high-speed chase on the interstate system of a major city might be considered reckless).