### A09A1955. PORTER v. MASSARELLI.
(692 SE2d 722)

PHIPPS, Judge.

Paul Leroy Porter, Jr., appeals the trial court's grant of summary judgment to police officer Victor B. Massarelli on his claims alleging that Massarelli had used excessive force against him when Massarelli shot him during a traffic stop. Finding that genuine issues of material fact exist, we reverse.

"We review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact."[1] Viewed in this light, the evidence showed that on June 17, 2005, at about 11:00 p.m. Massarelli instigated a traffic stop of a vehicle driven by Porter after he observed Porter speeding on an interstate highway. After seeing Massarelli's blue lights, Porter exited the highway. Unfamiliar with the exit, Porter missed the entrances to a gas station and turned onto an access road. Because of a large truck parked on the side of the road, he continued to drive to

---

[1] *Rahmaan v. DeKalb County*, 300 Ga. App. 572-573 (685 SE2d 472) (2009) (punctuation and footnote omitted).

the end of the access road, where he turned his car around in a cul de sac. Massarelli followed and got out of his vehicle. He was nervous because Porter had not pulled over sooner. Massarelli shone a spotlight on Porter and repeatedly told him to stop the car. Porter responded that he had been speeding because his wife was sick. Porter stopped the car, leaving it in drive but keeping his foot on the brake. Massarelli approached Porter on foot and, according to Porter, with his gun already drawn. He told Porter to put his hands up, and Porter complied. Massarelli directed Porter to put the car in park, and as Porter reached toward the gearshift on his steering column, he felt an impact and lost consciousness. He had been shot in the face and in the arm.

Massarelli admitted shooting Porter. He testified, however, that he unholstered and discharged his gun only after Porter began to accelerate his car. At that time, Massarelli had placed his arm through the car's open window, and he testified that although he had told Porter to put the car in park, Porter's right arm was "down by the center console." Massarelli testified that the car, which was already slowly moving, accelerated and he became trapped and was dragged along the ground. Massarelli further testified that, after he shot Porter, the car continued to accelerate and did not stop until it hit a tree. In the process, Massarelli was thrown to the ground and struck by the car.

Porter denied moving the car before being shot by Massarelli. He testified that at the time of the shooting, his car was at a "complete stop" and he had not accelerated or attempted to move it.

Porter claimed that Massarelli's use of force against him violated his rights under the Fourth Amendment of the United States Constitution[2] and under the Georgia Constitution,[3] and that the use of force constituted battery actionable under Georgia tort law.[4] Massarelli moved for summary judgment on the grounds that he was entitled to qualified and official immunity for his actions during the traffic stop and that the evidence did not support the state law claims. The trial court summarily granted Massarelli's motion.

1. Porter contends that the evidence, viewed in his favor, did not entitle Massarelli to qualified immunity from liability for using excessive force in violation of his Fourth Amendment rights under

---

[2] See 42 USC § 1983 (allowing plaintiff to obtain money damages for, inter alia, violations of rights under the United States Constitution).

[3] Porter alleged that Massarelli's use of force violated his rights under Ga. Const. of 1983, Art. I, Sec. I, Par. XIII (providing people the right to be secure in their persons against unreasonable seizures) and Ga. Const. of 1983, Art. I, Sec. I, Par. XVII (prohibiting abuse of people being arrested).

[4] See OCGA §§ 51-1-13; 51-1-14.

the United States Constitution,[5] and was sufficient to withstand summary judgment on his claim that Massarelli's actions in fact constituted excessive force in violation of the Fourth Amendment. We agree.

(a) Qualified immunity protects government officials performing discretionary functions from individual claims if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[6]

> The test for determining whether a defendant is protected from suit by the doctrine of qualified immunity is the objective reasonableness of the defendant's conduct as measured by reference to clearly established law. On a motion for summary judgment, if the applicable law was clearly established at the time the defendant acted [and it prohibited the action], the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.[7]

When the shooting occurred, clearly established law provided that an officer's use of deadly force to apprehend a suspect violated the suspect's Fourth Amendment rights where the suspect posed no immediate threat to the officer and no threat to others.[8] The law further provided that the officer's actions were to be analyzed for their objective reasonableness under the circumstances, without regard to underlying intent or motivation.[9] And the law recognized circumstances justifying the use of deadly force, providing:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the

---

[5] See *Graham v. Connor*, 490 U. S. 386, 388 (109 SC 1865, 104 LE2d 443) (1989) (analyzing claim that law enforcement officer used excessive force in making arrest, investigatory stop or other seizure under Fourth Amendment's "objective reasonableness" standard).

[6] *Harlow v. Fitzgerald*, 457 U. S. 800, 818 (IV) (B) (102 SC 2727, 73 LE2d 396) (1982) (citations omitted); see *Kline v. KDB, Inc.*, 295 Ga. App. 789, 793 (2) (673 SE2d 516) (2009). The parties agree that the actions of Massarelli at issue in this case were discretionary. See *Kidd v. Coates*, 271 Ga. 33 (518 SE2d 124) (1999) (officer's act of firing gun at person while executing no-knock search warrant at person's home was discretionary).

[7] *Gardner v. Rogers*, 224 Ga. App. 165, 167 (1) (480 SE2d 217) (1996) (citation and punctuation omitted). See generally *Saucier v. Katz*, 533 U. S. 194, 202 (II) (121 SC 2151, 150 LE2d 272) (2001) (in determining whether officer is entitled to qualified immunity for alleged violation of Fourth Amendment right not to be subjected to excessive force, we ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted), overruled on other grounds, *Pearson v. Callahan*, ___ U. S. ___ (129 SC 808, 172 LE2d 565) (2009).

[8] See *Tennessee v. Garner*, 471 U. S. 1, 11 (II) (B) (105 SC 1694, 85 LE2d 1) (1985).

[9] *Graham*, supra at 397.

officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon . . . deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.[10]

Massarelli contends that Porter threatened him with a weapon, namely his moving vehicle. But the evidence viewed in the light most favorable to Porter showed that Porter's car was not moving when Massarelli shot him. Instead, this evidence showed that Porter, a driver suspected of speeding, had pulled over and brought his vehicle to a stop, and that he was reaching to put the car into park at Massarelli's request when he was shot.[11] Contrary to Massarelli's assertion in his appellate brief, case law addressing facts identical to these is not necessary for a reasonably competent public official to know that the use of deadly force in such circumstances is unlawful.[12]

Massarelli argues that Porter's evidence raised only conjecture that his car moved after rather than before the shooting, and thus was insufficient to withstand summary judgment. But Porter expressly testified that his car was *not* moving when Massarelli shot him. Citing *Scott v. Harris*,[13] Massarelli argues that the trial court was authorized to disregard Porter's testimony and instead determine the objective reasonableness of his actions based on *his* version of the events surrounding the shooting. In *Scott*, the United States Supreme Court held: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[14]

In support of his position that the court was authorized to disregard Porter's testimony, Massarelli argues that the testimony was contradicted by the record on the issue of whether, at the time of the shooting, his car was perpendicular to or parallel to the police car.

---

[10] *Tennessee*, supra at 11-12.

[11] Thus, cases cited by Massarelli for the proposition that an officer may use deadly force when threatened by a moving car or after engaging in a physical altercation with a suspect are inapposite.

[12] See generally *Hope v. Pelzer*, 536 U. S. 730, 741 (III) (122 SC 2508, 153 LE2d 666) (2002) (general constitutional rule already identified in decisional law may apply with obvious clarity to specific conduct in question, even though very action in question has not previously been held unlawful); *Byrd v. Cavenaugh*, 269 Ga. App. 612, 615 (604 SE2d 655) (2004) (official's conduct can lie so obviously at the very core of what the Fourth Amendment prohibits that conduct's unlawfulness is readily apparent, notwithstanding lack of fact-specific case law).

[13] 550 U. S. 372 (127 SC 1769, 167 LE2d 686) (2007).

[14] Id. at 380 (III) (A).

The record, however, shows no such contradiction. Porter testified that when he entered the cul de sac the two cars were perpendicular to each other. This is not inconsistent with his testimony that, after he turned around in the cul de sac and stopped, the two cars were next to each other. Moreover, Massarelli himself testified that the cars were both perpendicular and parallel to each other at different points during the stop. And video recording evidence, cited by Massarelli as being in conflict with Porter's testimony, comports with Porter having stopped his car next to Massarelli's car.

Massarelli also argues that the video recording contradicted Porter's testimony that Massarelli told him to put up his hands. But even if the evidence that Porter was *not* told to put up his hands is viewed as undisputed (as Massarelli, citing *Scott*, argues it must), this does not render Porter's version of the other circumstances of the traffic stop unbelievable under *Scott*.[15] Accordingly, we find no basis upon which the trial court was authorized to disregard all of Porter's testimony concerning the pertinent circumstances of the traffic stop in ruling on Massarelli's motion for summary judgment.

Given the genuine issues of material fact presented by Porter's testimony concerning whether Massarelli was entitled to qualified immunity from the Fourth Amendment claim, the trial court erred in granting summary judgment on this basis.

(b) The existence of genuine issues of material fact concerning whether Massarelli's use of deadly force was reasonable under the circumstances, which preclude Massarelli from asserting qualified immunity as to Porter's claim of a Fourth Amendment violation,[16] also withstand summary judgment on the merits of that claim.[17]

2. Porter contends that the evidence, viewed in his favor, did not support a finding that Massarelli was entitled to official immunity from liability for using excessive force in violation of his rights under the Georgia Constitution[18] and state tort law.[19] Again, we agree.

Because Massarelli's actions during the traffic stop were discretionary, he is entitled to official immunity unless Porter demon-

---

[15] Compare id. at 380-381 (finding summary judgment respondent's version of events was a "visible fiction" that was "so utterly discredited by the record that no reasonable jury could have believed him").

[16] See Division 1 (a), supra.

[17] See *Graham*, supra.

[18] Porter alleged that Massarelli's use of force violated his rights under Ga. Const. of 1983, Art. I, Sec. I, Par. XIII (providing people the right to be secure in their persons against unreasonable seizures) and Ga. Const. of 1983, Art. I, Sec. I, Par. XVII (prohibiting abuse of people being arrested).

[19] Porter alleged that Massarelli's use of force constituted battery actionable under OCGA §§ 51-1-13 and 51-1-14.

strates that he acted with actual malice or an intent to injure.[20] In the context of a shooting by a police officer, the Supreme Court of Georgia has held that if the officer shot "intentionally and without justification, then [he] acted solely with the tortious actual intent to cause injury" and would not be protected by official immunity.[21] If, however, the officer shot

> in self-defense, then [he] had no actual tortious intent to harm . . . , but acted only with the justifiable intent which occurs in every case of self-defense, which is to use such force as is reasonably believed to be necessary to prevent death or great bodily injury to themselves or the commission of a forcible felony.[22]

Massarelli testified that he shot Porter to protect himself from being killed or seriously injured while being dragged along the road by Porter's accelerating car. But, as discussed above,[23] Porter's testimony raised a factual question concerning whether Massarelli discharged his gun before or after the car began to move, thereby disputing the evidence that Massarelli acted with justification. Viewed in the light most favorable to Porter, this factual dispute precluded a determination as a matter of law that Massarelli was entitled to official immunity for his actions.

3. Porter contends that the evidence, viewed in the light most favorable to him, was sufficient to withstand summary judgment on his claims brought under the Georgia Constitution and state tort law. Massarelli responds that summary judgment on the claims was appropriate because his actions were reasonable and legally justified.[24] For the reasons set forth above, we find that a jury question existed as to the reasonableness and justification of Massarelli's actions that precluded summary judgment on these claims, as well.[25]

---

[20] See *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001).

[21] *Kidd*, supra at 34 (citation and punctuation omitted).

[22] Id. (citations omitted).

[23] See Division 1, supra.

[24] See, e.g., OCGA § 51-1-13 (providing legal justification as a defense to cause of action asserted by person who sustained physical injury caused by another); *City of East Point v. Smith*, 258 Ga. 111, 112 (1) (365 SE2d 432) (1988) (lawfulness of seizure under Georgia Constitution can be analyzed using same reasonableness standard as seizure under Fourth Amendment); *Bell v. Smith*, 227 Ga. App. 17, 18 (488 SE2d 91) (1997) (person is legally justified in using deadly force against another to the extent he reasonably believes such force is necessary to prevent death or great bodily injury to himself or another or to prevent commission of forcible felony), citing OCGA § 16-3-21 (a); *Gardner*, supra at 169 (4) (where jury could find that officer's conduct toward plaintiff was not justified, trial court erred in dismissing plaintiff's claim for battery pursuant to OCGA § 51-1-14).

[25] See Division 1, supra.

*Judgment reversed. Smith, P. J., and Bernes, J., concur.*

DECIDED MARCH 24, 2010.

*Page Perry, Craig T. Jones*, for appellant.
*Taylor, English & Duma, Darren T. Horvath*, for appellee.