[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15702
_____

D.C. Docket No. 1:12-cv-04186-ODE


TENISHA FELIO,
Individually,
JOHN E. TOMLINSON,
as Administrator of the Estate of
James Edward Felio (on behalf of Tenisha Felio
and the minor children of James Edward Felio and Tenisha Felio),

                                                              Plaintiffs-Appellants,

versus

CHRISTOPHER HYATT,
Individually, and in his capacity as a police officer for the
City of Lawrenceville, Georgia,
KARL HYDRICK,
Individually, and in his capacity as a police officer for the
City of Lawrenceville, Georgia,
CITY OF LAWRENCEVILLE POLICE DEPARTMENT,
CITY OF LAWRENCEVILLE, GEORGIA,

                                                              Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 26, 2016)

Before HULL and JILL PRYOR, Circuit Judges, and CONWAY,[*] District Judge.

PER CURIAM:

In this 42 U.S.C. § 1983 action, plaintiffs Tenisha Felio, as surviving spouse, and John Tomlinson, as administrator of the estate of James Felio, appeal the district court's grant of summary judgment to the defendants on the federal claims for excessive use of deadly force and the state law claim for wrongful death. James Felio, although unarmed, was shot and killed during an interaction with defendants Officer Christopher Hyatt and Officer Karl Hydrick of the defendant City of Lawrenceville Police Department. Importantly, the defendant officers knew that Mr. Felio did not have a weapon on him.

After review of the record and with the benefit of oral argument, we affirm as to defendants Officer Hydrick, the City of Lawrenceville, and the City of Lawrenceville Police Department, and reverse as to Officer Hyatt.

_____

[*] Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

2

## I.  STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment and its determination that defendants Officer Hyatt and Officer Hydrick were entitled to qualified immunity.  See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).  At the summary judgment stage, we view the facts in the light most favorable to the plaintiff and draw all inferences in the plaintiff's favor.  Singletary v. Vargas, 804 F.3d 1174, 1176 n.2 (11th Cir. 2015) (citing Tolan v. Cotton, 572 U.S. ___, ___, 134 S. Ct. 1861, 1866 (2014)).  Summary judgment is appropriate only when, under the plaintiff's version of the facts, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## II.  FACTUAL BACKGROUND

Here, during their depositions, Officers Hyatt and Hydrick testified that they responded to a 911 call reporting a domestic disturbance at a residence on December 11, 2010.  When they arrived, Mr. Felio was asleep in the upstairs bedroom.  Officer Hyatt pulled back the covers and woke Mr. Felio, who was naked.  They gave Mr. Felio a pair of pants and started questioning him.  Neither officer observed a weapon on Mr. Felio's naked body or in the pants they gave him.

After Mr. Felio refused to respond to the officers' questions, the officers attempted to arrest him. However, Mr. Felio resisted, and a struggle ensued on the bed, during which Officer Hydrick tased Mr. Felio approximately nine times.[1] As the struggle continued, Mr. Felio and Officer Hydrick ended up rolling off the bed and wrestling on the floor. Even off the bed, Mr. Felio was on his back, with Officer Hydrick on top of him.

According to the officers, Mr. Felio attempted to grab Officer Hydrick's gun from the holster on Officer Hydrick's right side during the wrestling. The defendants testified that Mr. Felio put his hand on Officer Hydrick's gun, which was in the holster, but admit that the firearm at all times remained secured in the holster. They explained that holsters have a safety mechanism or latch to keep the gun inside.

While Mr. Felio and Officer Hydrick struggled, Officer Hyatt feared that Mr. Felio would ultimately take control of the weapon in Officer Hydrick's holster. So Officer Hyatt yelled "lethal" to warn Officer Hydrick that he was going to shoot. While on the floor on top of Mr. Felio, Officer Hydrick rolled slightly away, with Mr. Felio still grabbing towards the gun, and Officer Hyatt fatally shot

---

[1] Officer Hydrick tased Mr. Felio by pressing the taser directly against Mr. Felio's skin in "drive-stun" mode. Officer Hydrick explained that Mr. Felio knocked the cartridge out of the taser so he was unable to fire "probes." The taser was operational but appeared to have no effect on Mr. Felio in "drive-stun" mode. The plaintiffs' expert opined that tasers override the subject's central nervous system when fired, but only cause pain in "drive-stun" mode.

Mr. Felio in the abdomen.  Officer Hyatt's weapon was less than ten feet from Mr. Felio when he fired the single shot.[2]  The officers testified that it was a "dynamic" scene and only a couple seconds passed between Mr. Felio's reaching for Officer Hydrick's gun and Officer Hyatt's firing.  The officers admit, however, that Mr. Felio, once off the bed, remained lying on the floor.

Tenisha Felio, the spouse, recounted a dramatically different series of events.  Mrs. Felio testified that the struggle was over before she arrived upstairs and before the shot.  She saw Mr. Felio lying still on his back on the floor, with his hands empty and up in the air to the side of his head.  Mrs. Felio paints a picture of Mr. Felio surrendering.  Mr. Felio looked tired and was not moving or speaking.  According to Mrs. Felio, Officer Hydrick was standing in the corner of the bedroom, while Officer Hyatt was standing at the foot of the bed and had his gun out.

Also according to Mrs. Felio, Officer Hyatt was holding the gun with both hands, but did not have it aimed.  Officer Hyatt then removed his right hand from the gun and waved toward Officer Hydrick, signaling Officer Hydrick to move back.  He returned his right hand to the gun.  After seeing this, Mrs. Felio yelled, "[D]on't shoot!"  In response, Officer Hyatt took his left hand off the gun and

---

[2] Officer Hyatt was also armed with pepper spray, a baton, and a taser, and he had confirmed that the taser was working earlier that day.  Officer Hyatt did not consider deploying these tactics.

waved her out of the way.  Officer Hyatt returned his left hand to the gun, and using both hands, aimed the gun down at Mr. Felio and shot.

Mrs. Felio testified that Officer Hyatt had "plenty of time to wave" people back out of the way and "still shot" Mr. Felio, who was lying on his back on the floor.  She did not disagree when defense counsel characterized her version of the events as a shooting "in cold blood."  At the time of Officer Hyatt's shooting, Mrs. Felio places Officer Hydrick standing over in the corner and not engaged with Mr. Felio.

Anita Flowers, Mrs. Felio's cousin, also witnessed part of the incident and testified that, seconds before she heard the gunshot, Mr. Felio was lying on the floor with his torso slightly raised and no one else was on the floor with him. Officer Hyatt was standing nearby and looked "relaxed," and she could not see Officer Hydrick but deduced that he must have been standing.  Ms. Flowers left the bedroom area because she thought the officers were about to handcuff Mr. Felio and the struggle was over.

In recounting the plaintiffs' version of the facts, we recognize that the parties hotly dispute what occurred at the Felio residence, and that the jury ultimately may not adopt Mrs. Felio's and Ms. Flower's account of the events.  But we must accept their version as true for purposes of our ruling at this juncture.  See Singletary, 804 F.3d at 1176 n.2.  And their version has Mr. Felio lying still on his

6

back on the floor, unarmed and compliant, with only the pants on that the officers gave him.

Mrs. Felio's and Ms. Flower's deposition testimony created genuine disputes of material fact as to the circumstances of the shooting and rendered summary judgment inappropriate. See Fed. R. Civ. P. 56(a). We briefly explain why defendant Officer Hyatt is not entitled to judgment as a matter of law on the plaintiff estate's § 1983 claim against him.[3] See id.

### III. EXCESSIVE FORCE

The Fourth Amendment prohibits officers from using excessive force when conducting an arrest. See Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871 (1989). Courts examine the reasonableness of the force in light of the particular circumstances of the case in order to determine whether the force was excessive. See id. at 396-97, 109 S. Ct. at 1871-72. This is an objective inquiry and asks how a reasonable officer at the scene would act. See id. at 396-97, 109 S. Ct. at 1872.

Officers acting within their discretionary authority may also seek protection from suit through qualified immunity. See Lee, 284 F.3d at 1193-94. An officer is

---

[3] As discussed later, the plaintiff estate brings the § 1983 claim for the alleged violation of Mr. Felio's constitutional rights. Mrs. Felio, as surviving spouse, is the proper plaintiff on the wrongful death action under state law.

protected by qualified immunity unless his conduct violates clearly established federal law.  See id.

Once an officer establishes that he was acting within his discretionary authority, this Court applies a two-part test to determine whether the plaintiff has shown "that qualified immunity is not appropriate."  Id. at 1194.  First, we ask whether the officer violated a federal constitutional or statutory right.  Id. at 1193-94.  Then, we determine whether the right was clearly established such that the officer would have been "on notice" that his conduct was unlawful.  Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009).  A right can be clearly established by: (1) "case law with indistinguishable facts"; (2) "a broad statement of principle within the Constitution, statute, or case law"; or (3) "conduct so egregious that a constitutional right was clearly violated."  Id. at 1291-92.

Drawing all inferences in the plaintiff estate's favor, as we must, we are confronted with a scene in which Mr. Felio, unarmed, was lying still on his back on the floor with his hands up by his head to surrender when Officer Hyatt shot him.  See Singletary, 804 F.3d at 1176 n.2.  He was not resisting the officers or moving.  He had no weapon and was complying with the officers' authority by lying still on his back.  Importantly, in this case the officers knew Mr. Felio had no weapon, and no officer contends that he thought he saw a weapon or an object that might be used as a weapon.

8

Furthermore, based on Mrs. Felio's evidence, a jury could reasonably find that Officer Hydrick was completely disengaged from the preceding struggle and standing away from Mr. Felio in the corner of the room. Enough time even passed between Officer Hydrick disengaging and the shot that Officer Hyatt was able to wave to Officer Hydrick, wave to Mrs. Felio in response to her plea, and aim his gun. Under her version of the facts, a jury could reasonably find that the struggle had stopped, and that Mr. Felio was unarmed, subdued, and lying flat on his back while the officers were standing away from him.

We have held that an officer used excessive force when he shot an individual who previously violently resisted arrest, but at the time of the shot was "retreating, apparently unarmed, and outside of striking distance." Salvato v. Miley, 790 F.3d 1286, 1293-94 (11th Cir. 2015); see also Edwards v. Shanley, 666 F.3d 1289, 1296 (11th Cir. 2012) (stating that it was "[c]ritical" to this Court's holding of excessive force that the officer "increased the force applied at the same time the threat presented by [the suspect] decreased," and the suspect was "laying [sic] prone with his hands exposed and begging to surrender"); Gilmere v. City of Atlanta, 774 F.2d 1495, 1496-97, 1502 (11th Cir. 1985) (en banc) (upholding the district court's judgment that there was a Fourth Amendment violation when an officer shot a drunken suspect—who earlier was reported to have a gun—after the suspect resisted arrest by "flailing," running away, and engaging in a "scuffle"), abrogated

9

on other grounds by Graham, 490 U.S. at 395, 109 S. Ct. at 1871; cf. Perez v. Suszczynski, ___ F.3d ___, ___, No. 14-13619, slip op. at 2-3, 5 (11th Cir. Jan. 12, 2016) (holding that an officer was not entitled to qualified immunity when the officer shot the decedent in the back while the decedent was "compliant and prostrate on his stomach, with his hands behind his back," and another officer had already thrown the decedent's gun out of reach).

We recognize that the struggle occurred inside of a single bedroom. But even if the defendants could argue that Mr. Felio still could have gotten up from the floor and thus remained within striking distance of Officer Hydrick, the individualized circumstances of this case would lead us to the same result. Our standard focuses on whether the "suspect poses a threat of serious physical harm" and the immediacy of that harm. See Morton v. Kirkwood, 707 F.3d 1276, 1281 (11th Cir. 2013). Mrs. Felio's testimony suggested that the situation had stabilized before Officer Hyatt fired his gun, and that the room had been still for enough time that a reasonable officer would have recognized that Mr. Felio had stopped resisting. With Mr. Felio subdued, and Officer Hydrick's holstered gun no longer close to Mr. Felio's hands, which a jury could find were near the floor, there was not an immediate threat. See id.

Having determined that the plaintiffs' facts showed a Fourth Amendment violation, we also conclude that, at this juncture, the district court erred by granting

10

Officer Hyatt qualified immunity.  The Supreme Court held long ago that deadly force is not justified when the suspect is unarmed and poses no immediate threat to the law enforcement officers at the scene.  See Tennessee v. Garner, 471 U.S. 1, 11, 105 S. Ct. 1694, 1701 (1985).  Moreover, shooting a compliant individual is "conduct [that] lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct [should have been] readily apparent."  See Lee, 284 F.3d at 1199.  Under Mrs. Felio's version of the facts, Officer Hyatt's actions violated a clearly established right, and qualified immunity does not apply.  See Lewis, 561 F.3d at 1291-92.

Therefore, we reverse the district court's grant of summary judgment to Officer Hyatt on the plaintiff estate's § 1983 claim for excessive force.  "Our holding today does not mean [Officer Hyatt] is entirely precluded from enjoying qualified immunity; there are numerous disputed issues of material fact, which a fact-finder may ultimately resolve in his favor."  Perez, ___ F.3d at ___, slip op. at 16-17.  Our holding is only that a trial is required for a jury to find the relevant facts.[4]

---

[4] We affirm the district court's grant of summary judgment as to defendant Officer Hydrick.  The plaintiffs abandoned their claim that Officer Hydrick used excessive force in tasing Mr. Felio.  Furthermore, Officer Hydrick did not fire the gun or tell Officer Hyatt to shoot, and the plaintiffs did not argue in the district court that Officer Hydrick failed to intervene and prevent Officer Hyatt from shooting.

## IV.  MUNICIPAL LIABILITY

As to the defendant City of Lawrenceville, the defendants point out that there is no respondeat superior liability for Officer Hyatt's shooting.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978) ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.").  The defendants further argue that, even if a constitutional violation is shown, the plaintiffs have not presented any evidence to demonstrate that the City had a custom or policy of excessive force or inadequate training or supervision.  See Gold v. City of Miami, 151 F.3d 1346, 1350-51 (11th Cir. 1998) (stating that a municipality is liable for its failure to train or supervise its employees only when the "municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action" as a matter of official policy).  In the reply brief, the plaintiffs do not cite any evidence or argue this issue.

In any event, the plaintiffs failed to put forth evidence of an official policy of deliberately foregoing needed police training and supervision.  Thus, we affirm the grant of summary judgment as to the defendant City of Lawrenceville.[5]

---

[5] We also note that the plaintiffs abandoned their claims against the City of Lawrenceville Police Department and the federal claim for unlawful arrest.

## V.  STATE LAW CLAIM

### A.    Georgia's Wrongful Death Statute

Turning to the state law claims, we note that the plaintiffs expressly abandoned nearly all of their claims, advancing only what they call a "claim of wrongful death pursuant to the Georgia Wrongful Death statute":

> Appellants abandon the following state law claims against the Appellees: battery, intentional infliction of emotional distress, negligent infliction of emotional distress, false arrest, and false imprisonment under Title 51 of the Official Code of Georgia Annotated, as well as abuse during the course of an arrest in violation of Art. I, § I, ¶ 17 of the Georgia Constitution.  Appellants intend on proceeding under the claim of wrongful death pursuant to the Georgia Wrongful Death statute.

The plaintiffs' briefs on appeal describe that claim as "the pendant state law claim[] for wrongful death."  The plaintiffs argue that, contrary to the district court's finding, the defendant officers are not entitled to official immunity from the wrongful death claim under Georgia law because they acted with actual malice or intent to cause injury.

Although Mrs. Felio is not the administrator of her husband's estate, she (and not the estate) may pursue a state law claim for the wrongful death of her husband under Georgia law.  Ga. Code Ann. § 51-4-2(a).  The Georgia Wrongful Death statute provides that "[t]he surviving spouse . . . may recover for the homicide of the spouse . . . the full value of the life of the decedent, as shown by the evidence."  Id.  The statute states that "[h]omicide includes all cases in which

13

the death of a human being results from a crime, from criminal <u>or other negligence</u>, or from property which has been defectively manufactured, whether or not as the result of negligence." <u>Id.</u> § 51-4-1(2) (emphasis added) (quotation marks omitted). Accordingly, a surviving spouse will succeed on a wrongful death claim if she can establish that the defendant negligently caused her husband's death. <u>See, e.g.,</u> <u>Bradley Ctr., Inc. v. Wessner</u>, 296 S.E.2d 693 (Ga. 1982) (upholding a jury award in a wrongful death case in which the decedent's children, who had survivorship rights, established that a mental facility was negligent in caring for the patient who killed their mother); <u>see also</u> <u>Mowell v. Marks</u>, 603 S.E.2d 702, 704 (Ga. Ct. App. 2004) ("[A] suit for wrongful death . . . is derivative to the decedent's right of action. A survivor cannot recover for the decedent's wrongful death if the decedent could not have recovered in his or her own right." (alteration in original) (quotation marks omitted)).

The defendant officers argue that Mrs. Felio has not adequately pled the wrongful death claim. We disagree. Mrs. Felio's complaint referred to both negligence and Title 51 of the Georgia Code, which contains the Wrongful Death Statute. Her brief on appeal, quoted above, did not list the negligence claim as abandoned, and the defendant officers acknowledge this fact in their brief on appeal. Given the record as a whole, it is clear that Mrs. Felio's negligence claim, which she alleged in the complaint and carried through to this appeal, is her

14

wrongful death claim.  After all, the Wrongful Death Statute is the state statute that gives her a cause of action to recover damages for the officers' allegedly negligent roles in causing her husband's death.  See Ga. Code Ann. § 51-4-2(a) (creating the wrongful death cause of action for the surviving spouse).

## B.     Official Immunity

Even if Mrs. Felio has a wrongful death claim for negligence, the defendant officers argue that there is no material fact issue as to negligence and that, in any event, they are entitled to official immunity.

Under Georgia law, a public officer is not personally liable for a discretionary act unless the officer "acted with actual malice or actual intent to cause injury."  Valades v. Uslu, 689 S.E.2d 338, 342-43 (Ga. Ct. App. 2009) (quotation marks omitted); see Ga. Const. art. I, § II, para. IX(d) (stating that officers "may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions").  This standard requires courts to "inquire into [the official's] subjective intent."  Jordan v. Mosley, 487 F.3d 1350, 1357 (11th Cir. 2007) (describing official immunity under Georgia law).  It asks whether the defendant had a wicked motive, or intended to cause harm to the plaintiff, rather than just intending to do the act that resulted in the plaintiff's injury.  See Kidd v. Coates, 518 S.E.2d 124, 125 (Ga. 1999).

15

This Court recently explained the demanding standard for "actual malice" in a case raising claims of trespass and malicious prosecution, where no bodily injury was involved:

> Actual malice is a demanding standard: it requires an officer to act with "a deliberate intention to do a wrongful act." Adams v. Hazelwood, 520 S.E.2d 896, 898 (Ga. 1999). True, a jury can infer actual malice based on an officer's conduct. See Lagroon v. Lawson, 759 S.E.2d 878, 883 (Ga. Ct. App. 2014). But unreasonable conduct does not support such an inference. See Bashir v. Rockdale Cty., 445 F.3d 1323, 1333 (11th Cir. 2006); Marshall v. Browning, 712 S.E.2d 71, 75 (Ga. Ct. App. 2011); Anderson v. Cobb, 573 S.E.2d 417, 419 (Ga. Ct. App. 2002). Even recklessly illegal conduct does not support an inference of actual malice. See Murphy v. Bajjani, 647 S.E.2d 54, 60 (Ga. 2007); Daley v. Clark, 638 S.E.2d 376, 386 (Ga. Ct. App. 2006).

Black v. Wigington, ___ F.3d ___, ___, No. 15-10848, slip op. at 9 (11th Cir. Jan. 22, 2016).

"Actual intent to cause injury" is also a demanding standard. However, "[i]n the context of a shooting by a police officer, the Supreme Court of Georgia has held that if the officer shot 'intentionally and without justification, then [he] acted solely with the tortious actual intent to cause injury' and would not be protected by official immunity." Porter v. Massarelli, 692 S.E.2d 722, 726 (Ga. Ct. App. 2010) (quoting Kidd, 518 S.E.2d at 125); see also DeKalb Cty. v. Bailey, 736 S.E.2d 121, 124-26 (Ga. Ct. App. 2012) (holding that, at the summary judgment stage, an officer was not entitled to official immunity as a matter of law because there was evidence that "he was not justified in shooting [the suspect] when [the suspect] was

16

running away from him," even taking into account the fact that the suspect appeared to have had a weapon at the start of the chase).

Viewing this record evidence in the light most favorable to the plaintiffs, a jury could find that Officer Hyatt intentionally shot Mr. Felio after the struggle ended and at a time when Mr. Felio was lying on the floor, unarmed and compliant. Under Georgia law, this record creates material issues of fact not only as to whether Officer Hyatt was negligent, but also as to whether he acted with "actual intent to cause injury" to Mr. Felio. See Valades, 689 S.E.2d at 343. Thus, under Georgia law, the district court erred at this juncture in granting Officer Hyatt summary judgment and official immunity as a matter of law.[6]

## VI.  CONCLUSION

We affirm the grant of summary judgment in favor of defendants Officer Hydrick, the City of Lawrenceville, and the City of Lawrenceville Police Department. We vacate the judgment in favor of defendant Officer Hyatt and remand the case to the district court for a trial as to him.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

---

[6] We affirm the district court's grant of official immunity as to Officer Hydrick for the same reasons as stated previously in footnote 4.

17