**FIRST DIVISION**
**BARNES, P. J.,**
**RICKMAN and LAND, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 26, 2023**

# In the Court of Appeals of Georgia

A23A0741. KAREN DELOACH COLLINS as personal representative of the ESTATE OF BENNY DELOACH v. SCHANTZ.

LAND, Judge.

After plaintiff Matthew Schantz led police on a high-speed motorcycle chase, Appling County sheriff Benny Deloach fired buckshot at him, hitting and injuring him. Schantz later brought an action against Deloach in federal court, asserting 42 U.S.C. § 1983 and state law claims. After the federal courts found that Deloach was entitled to immunity on Schantz's federal claim and declined to exercise pendent jurisdiction over the state claims, Schantz filed this action against Deloach's estate ("the Estate") in Appling County Superior Court, alleging battery, negligence, and

violations of the Georgia Constitution.[1] The trial court denied the Estate's motion for summary judgment, concluding that there is a factual dispute as to whether the Estate is entitled to official immunity.

We granted the Estate's application for interlocutory appeal from this ruling, and we now conclude that a genuine issue of material fact exists with respect to the viability of Schantz's state law tort claims, specifically his claims for battery and negligence. However, we also conclude that Schantz's claims arising under the Georgia Constitution are not viable and that the trial court erred when it authorized those claims to proceed. We therefore affirm in part and reverse in part.

Art. I, Sec. II, Par. IX (d) of the Georgia Constitution generally affords "all officers and employees of the state or its departments and agencies" acting within the scope of their official authority the protection of immunity from suits unless they have negligently performed or failed to perform their ministerial functions or unless they have acted "with actual malice or with actual intent to cause injury[.]" As the Supreme Court of Georgia has held, this constitutional provision

---

[1] Deloach died on August 10, 2020, while the federal case was pending in the Eleventh Circuit Court of Appeals.

protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice or corruption. Under this definition, an officer who, in the performance of his official duties, shoots another in self-defense is shielded from tort liability by the doctrine of official immunity. One who acts in self-defense does not act with the tortious intent to harm another, but does so for the non-tortious purpose of defending himself. Because an officer does not lose the right to defend himself when he acts in his official capacity, . . . an injurious work-related act committed by an officer, but justified by self-defense, comes within the scope of official immunity.

(Citations and punctuation omitted.) *Kidd v. Coates*, 271 Ga. 33, 33 (518 SE2d 124) (1999). It follows from the above that although "county law enforcement officers are entitled to qualified immunity for the negligent performance of discretionary acts within the scope of their authority[,] they may be personally liable if they negligently perform a ministerial act or *act with actual malice or an intent to injure*." (Emphasis supplied; footnote omitted.) *Cameron v. Lang*, 274 Ga. 122, 124-125 (2) (549 SE2d 341) (2001).[2] In considering the question of whether Deloach's estate is entitled to

---

[2] Our Supreme Court has used the terms "official immunity" and "qualified immunity" interchangeably. See id. at 123 (1) (referring to "[t]he doctrine of official immunity, also known as qualified immunity"; *Gilbert v. Richardson*, 264 Ga. 744, 750 (4) (452 SE2d 476) (1994) (referring to "official or qualified immunity").

3

official immunity, we construe the evidence in favor of Schantz to determine whether "a genuine issue of material fact remains" as to Deloach's "actual intent to cause injury" to Schantz. *Kidd*, 271 Ga. at 33.

Thus viewed in favor of Schantz, the record shows that on Friday, June 17, 2016, after smoking marijuana, Schantz left Perry for St. Simons Island on his new motorcycle, which lacked a tag. As Schantz drove through Appling County on U.S. Highway 341, he noticed a patrol car pass him on the opposite side and then make a U-turn in order to follow him. When the officer turned on his blue lights, Schantz fled with the first and then other officers in pursuit, eventually reaching speeds of over 100 miles per hour. As Schantz pulled away from the pursuing officers, a captain with the Wayne County Sheriff's Office got a call about the chase and saw a single headlight coming towards him at high speed. As the Wayne County officer began to drive in the same direction as the motorcycle, Schantz approached and passed him, at which time the officer saw Schantz "laid down across [his] fuel tank" in "race mode stance" as he sped south. Schantz then made a U-turn, popped a wheelie in front of the officer, and passed him before leaving the highway briefly and then returning north toward Appling County.

Schantz soon approached and then passed through an intersection where Deloach and an Appling County lieutenant were waiting for him on opposite sides and lanes. After swerving to avoid the lieutenant, Schantz continued north, at which time Deloach fired a "warning shot" from his shotgun. Schantz testified that this shot struck the pavement and his motorcycle. Schantz then slid to a stop and put his right hand into the air "for maybe two or three seconds," keeping his left hand on the bike's clutch. But when Schantz heard Deloach rack the shotgun again and saw him "squint[] his eye like he was going to shoot," Schantz "took off" towards the south as Deloach fired again, causing buckshot to penetrate the right side of Schantz's helmet, face, and neck as well as the motorcycle's right side mirror. As Schantz attempted to avoid the lieutenant, he lost control of the motorcycle and crashed, with the lieutenant's truck ending up on top of the motorcycle.

After fleeing on foot, Schantz was taken to a hospital, where he was diagnosed with fractures to his face, jaw, and eye socket. A trajectory analysis showed that the second shot was fired more than 50 feet from Schantz as his motorcycle was moving away from Deloach. Schantz's expert testified that these findings were consistent with Schantz's testimony that the shot that struck him was fired while Schantz was

5

fleeing, not approaching, Deloach. The expert also concluded that "[a]t no time was the Sheriff ever in the motorcycle's path."

After the dismissal of Schantz's federal action,[3] he filed this suit against Deloach's Estate, alleging battery, negligence, and violations of the Georgia Constitution. The Estate moved for summary judgment on all claims, contending that it was entitled to immunity for Deloach's discretionary acts of pursuing Schantz and firing his shotgun. The trial court denied the motion, holding that a question of material fact remained for the jury as to whether Deloach acted in self-defense or with actual intent to injure Schantz.

1. The Estate first argues that the trial court erred when it denied its motion for summary judgment because no genuine question remains as to Deloach's entitlement to official immunity. We disagree.

---

[3] The Eleventh Circuit affirmed the district court's dismissal on the ground that although "reasonable minds could perhaps disagree" as to whether Deloach's use of deadly force violated the Fourth Amendment, there was at the time of the incident no "clearly established law" to that effect. The Eleventh Circuit affirmed the district court's decision to decline the exercise of pendent jurisdiction as to Schantz's state law claims, however, and the dismissal of those claims without prejudice. The parties agree that these federal rulings have no res judicata effect on Schantz's remaining claims.

6

We understand that the protection of official immunity "is particularly important in the context of a high speed pursuit where police officers must make a split-second decision on whether to initiate the pursuit or continue it and the type of risks to take." *Cameron*, 274 Ga. at 123 (1). As laudable as this principle is, it does not provide blanket protection for all shootings by law enforcement officers. There are limits, and this case presents a classic factual question as to the scope of those limits. If Deloach shot Schantz "intentionally and without justification, then [he] acted solely with the tortious 'actual intent to cause injury'" and is not immune from suit. (Citations and punctuation omitted.) *Kidd*, 271 Ga. at 33. If, on the other hand, Deloach shot Schantz in self-defense, then Deloach is immune because he "had no actual tortious intent to harm him, but acted only with the justifiable intent which occurs in every case of self-defense, which is to use such force as is reasonably believed to be necessary to prevent death or great bodily injury to [himself] or the commission of a forcible felony." Id., citing OCGA § 16-3-21 (a) (defining justification in the use of force). The question before us, then, is whether a genuine question of material fact remains as to Deloach's intent to shoot Schantz intentionally and without justification, thus authorizing a factfinder to conclude that Deloach did so with an actual intent to cause harm. See *Kidd*, 271 Ga. at 33.

7

As we have noted, there was evidence before the trial court that Deloach's second shot was fired more than 50 feet from Schantz as his motorcycle was moving away from Deloach, and these findings were consistent with Schantz's testimony that the shot that struck him was fired while Schantz was fleeing, not approaching, Deloach. Schantz's expert also concluded that "[a]t no time was the Sheriff ever in the motorcycle's path."

Construed in favor of Schantz, this evidence authorized the trial court to conclude that a genuine question of material fact remained as to whether Deloach's second shot was fired with actual malice or actual intent to injure Schantz. At a minimum, the evidence is in conflict as to whether Deloach reasonably believed that the second shot was necessary to prevent either (a) death or great bodily injury to himself or (b) the commission of some other forcible felony.[4] Accordingly, there is a genuine issue of material fact that precludes the grant of summary judgment in favor of the Estate, and the trial court did not err with respect to this issue. See *Dekalb Cty.*

[4] Driving at a reckless rate of speed is not a forcible felony. See, e.g., *Fraser v. State*, 263 Ga. App. 764, 765-766 (1) (589 SE2d 329) (2003) (evidence that a defendant was "driving at an excessive rate of speed given the posted speed limit and the driving conditions existing at the time" was sufficient to sustain a conviction for reckless driving); OCGA § 16-1-3 (6) (defining a forcible felony as "any felony which involves the use or threat of physical force or violence against any person").

*v. Bailey*, 319 Ga. App. 278, 282-283 (2) (736 SE2d 121) (2012) (question of fact remained as to an officer's actual malice or intent to injure a man he shot in the back when the officer was "never threatened with a weapon and did not have probable cause to believe that the man running away [from him] had committed a crime involving serious physical harm"); *Porter v. Massarelli*, 303 Ga. App. 91, 95 (1) (a) (692 SE2d 722) (2010) (when a factual question remained as to whether an officer discharged his gun before or after the car driven by a plaintiff began to move, summary judgment on the ground of qualified immunity should have been denied); *Gardner v. Rogers*, 224 Ga. App. 165, 166-168 (1) (480 SE2d 217) (1996) (reversing grant of summary judgment to a deputy when genuine issues of fact remained as to whether he committed assault and battery on plaintiff intentionally and with actual malice).

2. The Estate also asserts that the trial court should have granted summary judgment in its favor on Schantz's claims asserted under the Georgia Constitution. Based on our precedent, we agree.

Schantz's complaint asserts that Deloach's use of deadly force violated the Georgia Constitution's ban on "unreasonable" seizures and on the "abuse" of a person "in being arrested." Georgia Const. of 1983, Art. I, Sec. I, Para. XIII and XVII. Even

9

assuming that these assertions concerning Deloach's alleged violations of Schantz's constitutional rights have merit, this Court has long noted that Georgia law contains "no equivalent to 42 U. S. C. § 1983, which gives a claim against a state officer individually for certain unconstitutional acts." *Howard v. Miller*, 222 Ga. App. 868, 871 (1) (476 SE2d 636) (1996); see also *Draper v. Reynolds*, 278 Ga. App. 401, 403 (2) n. 2 (629 SE2d 476 (2006). Based on this authority, there is no viable private cause of action against Deloach's Estate for his alleged constitutional violations. For this reason, the trial court erred in denying the Estate's summary judgment motion with respect to Schantz's claims arising under the Georgia Constitution, and that part of the trial court's judgment is reversed.[5]

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Rickman, J., concur.*

---

[5] Schantz's reliance on our decision in *Porter*, supra, is unpersuasive. While that case involved claims brought under the federal and state constitutions, as well as state tort law, it did not address the precise issue raised here–specifically, whether a cause of action exists for state constitutional violations. "Issues merely lurking in the record, neither brought to the court's attention nor expressly ruled upon, have not been decided so as to constitute precedent." (Citation and punctuation omitted.) *Wallace v. Chandler*, 360 Ga. App. 541, 544 (859 SE2d 100) (2021).