A11A0255. WILHELM v. HOUSTON COUNTY et al.

(713 SE2d 660)

ELLINGTON, Chief Judge.

In 2004, Cheryl Wilhelm filed suit against Houston County and the Houston County Health Department and against the builders of her home, Neal Waller, Jeanette Francis, and Sussex Construction Company (collectively "Sussex"), asserting claims for fraud and nuisance arising from a malfunctioning septic tank system. In four orders, the trial court granted each of the defendants' motions for summary judgment. Wilhelm appeals from the orders, contending that the trial court erred in finding that her claims against Sussex and the health department were barred by the statute of repose codified in OCGA § 9-3-51; that she had failed to show that Sussex and the health department committed fraud; and that there was no evidence that the county had any control over the creation or maintenance of the alleged nuisance. For the following reasons, we affirm.

> In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment[,] the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations omitted.) *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

So viewed, the record shows the following undisputed, relevant facts. Wilhelm purchased a newly constructed home from Sussex in November 1995; she did not hire an independent inspector to inspect the house before she purchased it. At the time of closing, Wilhelm received a printed plat of the property that had been filed with the county in July 1995, that showed the area surrounding her house was within a 100-year flood plain, and that included a note stating that the rear portion of the property was subject to holding water after periods of heavy rain. Shortly after Wilhelm moved into the house, she began having problems with her plumbing and septic tank system, including constantly clogged toilets and intermittent sewage backup into her home. She also noticed that the grass around her septic tank was brown and did not grow properly, that the lawn in that area was consistently wet and uneven, and that some of her trees were dying.

Over the next eight years, Wilhelm attempted to fix the problems by having her septic tank pumped out repeatedly and through various modes of self-help, including using a "snake" to unclog the sewage pipes and adding top soil to the uneven areas of her lawn. When she had a tree company employee remove some of her dying trees in 1996, the employee informed her that there was fill dirt in her yard that may have contributed to the loss of her trees. However, she did not contact Sussex or anyone else to determine why the fill dirt had been placed in her yard. In 2000, though, Wilhelm called Sussex about sewage backup in her master bathroom garden tub, and Sussex suggested that she contact the county and the man who installed the septic system. She had the septic tank pumped out after consulting with them, and the septic system worked properly for about two years. Wilhelm admitted that, although she repeatedly called Sussex about various, unrelated construction problems with her home, she never asked Sussex to change or repair the septic system prior to filing suit, nor did she hire an independent plumber or other professional to examine her plumbing and septic system in order to determine why she was having problems with it.

Then, in 2004, Wilhelm learned that, before her home was built in 1995, the county engineer had been concerned about potential drainage problems on her lot; that, as a result, the county had initially refused to approve the lot for residential construction and had asked the builders to address the drainage problems; and that the county approved the lot after the builders added fill dirt to the lot, elevating it above the 100-year flood plain, and took other measures to address the drainage problems. Wilhelm also contacted the Army Corps of Engineers, which determined that, at *that* time

(2004), portions of her lot met the Corps' definition of "wetlands."[1]

Based upon her belief that the problems with her septic system resulted from the fact that her home was built on wetlands with a history of drainage problems, Wilhelm sued Sussex, the county, and the health department[2] in December 2004, contending that the defendants committed fraud by concealing the property's designations as being located in wetlands and within a 100-year flood plain. In addition, she claimed that Sussex created a continuing nuisance by installing the septic system in unsuitable conditions and that the county and the health department were also liable for the continuing nuisance because they approved the installation of the septic system despite their knowledge of the drainage problems on her property. The trial court granted summary judgment to each of the defendants, finding that Wilhelm's claims against Sussex and the health department are barred by the eight-year statute of repose in OCGA § 9-3-51; that, even if the claims were not barred, Wilhelm had failed to show that Sussex made any fraudulent representations to her; and that she had failed to show that the county had any control over the creation or maintenance of the alleged nuisance.

1. Wilhelm contends that the trial court erred in concluding that her claims against Sussex and the health department are barred by OCGA § 9-3-51. Under OCGA § 9-3-51 (a) (1) and (2),

> [n]o action to recover damages . . . [f]or any deficiency in the survey or plat, planning, design, specifications, supervision or observation of construction, or construction of an improvement to real property . . . [or for] injury to property, real or personal, arising out of any such deficiency . . . shall be brought against any person performing or furnishing the survey or plat, design, planning, supervision or observation of construction, or construction of such an improvement more than eight years after substantial completion of such an improvement.

(a) In this case, Wilhelm's house (and the septic system) were completed before she moved in in November 1995, but she did not file suit for damages allegedly resulting from construction defects in

---

[1] The undisputed evidence shows, however, that, in 1993, when Sussex originally submitted a proposed plat for the subdivision and the county approved the plat for development, Wilhelm's lot was *not* designated as wetlands by the Army Corps of Engineers.

[2] Wilhelm sued the county and the county's health department separately, although it is unclear whether they are separate entities. It is unnecessary to determine whether they are the same entity or not, however, because it would not change the outcome of the appeal and, therefore, it is immaterial.

the septic system and/or the development of the property until December 2004, more than nine years later. Thus, her claims against Sussex and the health department are barred by OCGA § 9-3-51.

(b) Wilhelm argues, however, that OCGA § 9-3-51 does not apply to her claims, because the septic system is not an "improvement to real property" as that term is used in the statute. She argues that, because the system was "faulty" and did not perform properly, it did not "add value" to the property, suggesting that only improvements which perform properly and do not cause damage "add value" to the property and, therefore, only those improvements would be subject to the limitation period in OCGA § 9-3-51. This argument lacks merit, however, because the statute specifically applies to "deficiencies" in the design or construction of an improvement to real property that causes personal injury or property damage, such as the septic system in this case. It follows that, while an improvement that works properly and does not cause any damage arguably "adds value" to the property, it could not be deemed as having a "deficiency" *and*, because it caused no damage, no cause of action would arise from its use. Therefore, the statute would not apply in such a case. See *Armstrong v. Royal Lakes Assoc.*, 232 Ga. App. 643, 645 (1) (502 SE2d 758) (1998) (ruling that OCGA § 9-3-51 (a) did not apply to the case because it "did not involve a deficiency in the construction of an improvement to real property") (citation omitted).[3]

(c) Further, although Wilhelm asserted a cause of action for fraud in her complaint, a fraudulent act or statement by a defendant does not toll the statutory repose period of OCGA § 9-3-51, because "the statute of repose abrogates the action, and fraud under OCGA § 9-3-96[4] does not toll the statute of repose." *Esener v. Kinsey*, 240 Ga. App. 21, 23 (522 SE2d 522) (1999). However, a defendant may be equitably estopped from raising the defense of the statute of repose if the plaintiff reasonably relied on a fraudulent act or statement by the defendant that occurred *after* the plaintiff's injury accrued and, as a result of that fraud, the plaintiff did not file suit until after the repose period expired. Id. at 22-24.

---

[3] The words "improvement to real property" must be given a commonsense interpretation. An *improvement*, as contemplated by the statute, denotes a fixed alteration to the real estate. Several factors have arisen as being important to a commonsense analysis of what constitutes an improvement to real property. These factors are (1) is the improvement permanent in nature; (2) does it add to the value of the realty, *for the purposes for which it was intended to be used*; (3) was it intended by the contracting parties that the "improvement" in question be an improvement to real property or did they intend for it to remain personalty.
(Citations and punctuation omitted; emphases in original and supplied.) Id.

[4] Under OCGA § 9-3-96, "[i]f the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud."

In this case, though, Wilhelm failed to allege or to present evidence of any fraudulent act or statement to her by any of the defendants regarding the property's history of drainage problems, or the possible causes thereof, that occurred *after* she purchased the property or of any fraud that prevented her from filing her cause of action before 2004. Consequently, the defendants were not equitably estopped from raising a defense based upon the expiration of the statutory repose period of OCGA § 9-3-51. *Esener v. Kinsey*, 240 Ga. App. at 24.

2. Wilhelm also argues that her nuisance[5] claim is not barred by OCGA § 9-3-51, because the sewage backup from her negligently installed septic system constituted a "continuing nuisance" that is not subject to the eight-year statute of repose limitation period.[6]

(a) This argument fails, however, because Wilhelm could not maintain a nuisance action under the facts asserted in her complaint. In *Morgan Constr. Co. v. Kitchings*, 110 Ga. App. 599 (139 SE2d 417) (1964), this Court held that a plaintiff cannot maintain a nuisance claim that is based upon damage to a house resulting from a defect constructed into the house that was concealed from the plaintiff by the builder and/or the seller. Instead, the applicable causes of action are fraud (against the seller) and/or negligent construction (against the builder). *Cendant Mobility Financial Corp. v. Asuamah*, 285 Ga. 818, 820-822 (684 SE2d 617) (2009);[7] *Morgan Constr. Co. v. Kitchings*, 110 Ga. App. at 599.

(b) Moreover, in her complaint, Wilhelm alleged that, "with

---

[5] Under OCGA § 41-1-1, a nuisance is "anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man."

[6] See *Shaheen v. G & G Corp.*, 230 Ga. 646, 648 (2) (198 SE2d 853) (1973) ("In the case of nuisances which are transient rather than permanent in their character, the continuance of the injurious acts is considered a new nuisance, for which a fresh action will lie; and[,] although the original cause of action is barred, damages may be recovered for the continuance of the nuisance.") (citation and punctuation omitted).

[7] In *Cendant Mobility*, the Supreme Court of Georgia stated as follows:
Caveat emptor ("Let the buyer beware") is a common-law doctrine which serves as the general rule with regard to the purchase of realty. The long-standing recognition of the existence of an exception to the application of caveat emptor where the seller's fraud induced a purchaser of realty to buy the land makes caveat emptor unavailable as a defense to a seller, whether a builder or non-builder, when the seller engages in fraud, whether it be "active fraud" or "passive concealment fraud." Thus, where the seller of a house knows the house has serious defects and fails to disclose the defects to the buyer who is unaware of the defects and could not have discovered them in the exercise of due diligence, the suppression of the facts constitutes fraud to which caveat emptor is not a viable defense.
(Citations and footnotes omitted.) 285 Ga. at 819-820. Further, the Court held that the defense of caveat emptor is not available to builders against claims for negligent construction because, "where a dwelling is sold containing latent defects which the builder in the exercise of ordinary

knowledge of the hydric soil and/or wetland condition of the property and the placement of fill dirt on the property," Sussex "negligently and willfully pushed for and received the approval of the lot for a septic tank" and negligently installed the septic tank on the property, and the county and the health department "negligently and willfully approve[d] the lot for a septic tank." The complaint alleged that these actions, both individually and in concert, resulted in the maintenance of a continuing nuisance on her property that amounted to a taking of her private property right. However, although the "continuing nuisance" (the sewage backup and related problems) began appearing shortly after Wilhelm purchased the property, she failed to allege any acts by the defendants *after* the installation of the septic system that could conceivably constitute their "maintenance" of either the septic system or the problems it created.

Thus, the defendants' acts that, according to Wilhelm, resulted in the problems she experienced were not just *related* to the "construction of an improvement to real property," they were *essential* to such construction and occurred prior to the substantial completion of the improvement. Accordingly, any cause of action for damage to real property that resulted from the deficiencies in such construction is subject to the eight-year statute of repose in OCGA § 9-3-51. Wilhelm's argument to the contrary is without merit.

3. Although the trial court did not rule on whether Wilhelm's nuisance claim against the county is barred by OCGA § 9-3-51,[8] its grant of summary judgment to the county on the claim should be affirmed for the reasons given in Divisions 1 and 2 under the "right for any reason" rule.[9] See *McPherson v. McPherson*, 307 Ga. App. 548, 550 (1) (705 SE2d 314) (2011).

4. Having determined that Wilhelm's claims are barred, her remaining alleged errors are moot.

*Judgment affirmed. Miller, P. J., and Doyle, J., concur.*

DECIDED JUNE 21, 2011 —
RECONSIDERATION DENIED JULY 6, 2011 — ▮▮▮▮▮▮

---

care knew or should have known and which the buyer could not have reasonably discovered in the exercise of ordinary care, it is only right that the builder should be liable in negligence." (Citations and punctuation omitted.) Id. at 820.

[8] The trial court granted summary judgment to the county on the nuisance claim based upon its finding that there was no evidence that the county had any control over the creation or the maintenance of the nuisance.

[9] As for Wilhelm's fraud claim, the court properly found that the county is protected by sovereign immunity. Wilhelm concedes this issue. Further, although the court did not rule upon whether the health department was also entitled to sovereign immunity on the fraud claim, this Court's decision in *Fielder v. Rice Constr. Co.*, 239 Ga. App. 362, 367-368 (2) (522 SE2d 13) (1999), suggests that it would have been.

*Daniel, Lawson, Tuggle & Jerles, Robert R. Lawson, William R. Jerles, Jr.*, for appellant.

*Lumley & Howell, Jerry A. Lumley, O'Neal, Long, Hall & Gurd, Michael J. Long, Buckley Brown, Timothy J. Buckley III, Kelly L. Christopher, H. David Moore*, for appellees.