**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**August 28, 2013**

# In the Court of Appeals of Georgia

A13A1169. JOHNSON v. JOHNSON et al.

ELLINGTON, Presiding Judge.

In this medical fraud action, the defendants, Joseph Johnson, M.D. and Athens Orthopedic Clinic, P.A. (collectively "Dr. Johnson"), filed a motion for summary judgment on the fraud, punitive damages, and expenses of litigation claims brought by the plaintiff, Cedric Johnson. The State Court of Athens-Clarke County granted the motion, and Mr. Johnson appeals, arguing that a material question of fact remains regarding whether Dr. Johnson knew or should have known that Mr. Johnson had a particular medical condition and tortiously concealed that fact from him during the course of his medical treatment. For the following reasons, we affirm.

Summary judgment is proper where the movant shows that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Jackson v. K-Mart Corp.*, 242 Ga. App. 274, 275 (529 SE2d 404) (2000). "To win summary judgment, a defendant need not produce any evidence but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim." (Punctuation and footnote omitted.) *Hoffman v. AC&S, Inc.*, 248 Ga. App. 608, 610 (2) (548 SE2d 379) (2001). "[S]peculation which raises merely a conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment." (Punctuation and footnote omitted.) *Patterson v. Lopez*, 279 Ga. App. 840, 844 (4) (632 SE2d 736) (2006). "We review the trial court's grant of summary judgment de novo . . . [and view the evidence] in the light most favorable to the non moving party[.]" (Punctuation and footnote omitted.) *Rahmaan v. DeKalb County*, 300 Ga. App. 572, 572-573 (685 SE2d 472) (2009).

Viewed in light most favorable to the nonmovant, Mr. Johnson, the record shows the following facts.

On December 16, 2008, Mr. Johnson was injured while playing flag football and had x-rays taken of his left Achilles tendon and foot in the emergency department at St. Mary's Hospital. The emergency room physician diagnosed Mr. Johnson with

2

a partial Achilles injury and referred him to Athens Orthopedic Clinic for treatment. A physician assistant examined Mr. Johnson at the clinic on December 1 and noted, inter alia, "an obvious soft tissue swelling and palpable defect about 3 to 4 cm proximal to the insertion aspect of the Achilles" in his left foot. The physician assistant's impression was of a "left acute Achilles tendon rupture." Dr. Johnson examined Mr. Johnson on December 22 and reviewed the x-rays taken at St. Mary's Hospital. Based on his examination and review of the x-rays, Dr. Johnson confirmed the diagnosis of an acute rupture of the left Achilles tendon, noting a "palpable gap to his Achilles tendon there about 4 to 5 cm above the insertion." He performed a surgical repair of the tendon on December 23.

From January to August 2009, Mr. Johnson saw Dr. Johnson once per month to track his recovery and to work on physical therapy strategies. At three of these visits, Mr. Johnson complained that he was experiencing pain in his left heel area and around the surgical site, which Dr. Johnson told him was normal in patients recovering from this type of surgery. At the July 31, 2009 visit, Dr. Johnson told Mr. Johnson for the first time that he had a "Haglund deformity" on his left heel.[1] Dr. Johnson later deposed that his medical opinion at the time was "that the Haglund

[1] A Haglund deformity is a bony, enlarged abnormality on the back of the heel.

3

deformity was not significant enough to prevent Mr. Johnson from achieving a full recovery. I was more concerned about possible failure at the site of the surgical repair." To address these concerns, Dr. Johnson ordered an MRI, which was performed the same day. According to the physician who interpreted Mr. Johnson's MRI, the images revealed "likely underlying chronic Achilles tendinosis" and a "marked bulbous appearance to the distal one-third of the Achilles tendon located at 0.5 cm proximal to the distal calcaneal insertion." On August 10, Dr. Johnson offered Mr. Johnson recommendations for future treatment and recommended a second surgery to correct the Haglund deformity. Mr. Johnson terminated his relationship with Dr. Johnson, and sought treatment with another physician.

In this action, Mr. Johnson alleges that, in addition to the acute rupture of his left Achilles tendon, he also had the Haglund deformity on his left heel, that the Achilles tendon was likely defective at one or more places other than the location of the rupture, and that Dr. Johnson knew or should have known of the Haglund deformity during his treatment of Mr. Johnson before the December 23, 2008 surgery or, at least, before the surgery was complete. In addition, Mr. Johnson alleges that Dr. Johnson failed to disclose this information to him in order to cause him to undergo,

4

and pay for, further medical treatment when the Haglund deformity could have been resolved during the initial surgery.

The elements of a medical fraud claim are: (1) a false representation made by the defendant to the plaintiff; (2) scienter, that is, the defendant's moral guilt in making the misrepresentation, which requires knowledge that the representation was false when it was made; (3) an intention of the defendant to induce the plaintiff to act or refrain from acting in reliance on the representation; (4) a justifiable reliance on the representation by the plaintiff; and (5) damage to the plaintiff as a result of the representation. *Roberts v. Nessim*, 297 Ga. App. 278, 284 (1) (b) (676 SE2d 734) (2009). "In all cases of deceit, knowledge of the falsehood constitutes an essential element of the tort." OCGA § 51-6-2 (b). A false representation may simply be the omission or concealment of a material fact. *ReMax North Atlanta v. Clark*, 244 Ga. App. 890, 893 (537 SE2d 138) (2000).[2] "[W]here one person sustains towards another a relation of trust and confidence, his silence when he should speak or his failure to disclose what he ought to disclose constitutes fraud in law just as actual affirmative

---

[2] See also OCGA § 23-2-53 (Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.).

5

false representations." (Punctuation and footnote omitted.) *Douglas v. Bigley*, 278 Ga. App. 117, 122 (1) (b) (628 SE2d 199) (2006). "For a fraud action to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort." (Punctuation and footnote omitted.) *Roberts v. Nessim*, 297 Ga. App. at 284 (1) (b). It follows that "[w]here there is no evidence of scienter, that is, the false statement was knowingly made with false design, there can be no recovery." (Citation and punctuation omitted). *Farmers State Bank v. Huguenin*, 220 Ga. App. 657, 660 (2) (469 SE2d 34) (1996).

As Mr. Johnson contends, in contrast to a professional negligence claim,[3] expert testimony is not necessarily required to support an intentional tort, such as fraud, even if committed by a professional. See *Labovitz v. Hopkinson*, 271 Ga. 330, 336-337 (3) (519 SE2d 672) (1999) (OCGA § 9-11-9.1 does not apply to claims grounded on a professional's intentional acts, and, therefore, such complaints are not required to be accompanied by an expert affidavit.); *Smith v. Morris, Manning &*

---

[3] See OCGA § 9-11-9.1 (a) ("In any action for damages alleging professional malpractice against . . . [a] professional licensed by the State of Georgia . . . [or] [a]ny licensed health care facility alleged to be liable based upon the action or inaction of a health care professional licensed by the State of Georgia[,] . . . [t]he plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim.").

*Martin*, 264 Ga. App. 24, 26 (589 SE2d 840) (2003) (Because OCGA § 9-11-9.1 does not apply to claims based on a professional's alleged intentional conduct, an expert affidavit is not required for a fraud claim, even if it is "strikingly similar" to a professional negligence claim.). Although OCGA § 9-11-9.1 does not apply and, as a result, Mr. Johnson was not required to attach an expert affidavit to his medical fraud complaint, this does not mean that expert testimony will not be necessary for a jury to find in his favor. Under Georgia law, "expert evidence is required where a 'medical question' involving truly *specialized* medical knowledge (rather than the sort of medical knowledge that is within common understanding and experience)" is needed to establish a causal link between the defendant's conduct and the plaintiff's injury. (Citation omitted; emphasis in original.) *Cowart v. Widener*, 287 Ga. 622, 622 (697 SE2d 779) (2010). See *Gilbert v. R. J. Taylor Mem. Hosp.,* 265 Ga. 580, 581, n. 4 (458 SE2d 341) (1995) (Although the plaintiff's cause of action against a hospital was for simple negligence, medical questions were raised, which required expert evidence.).

In seeking summary judgment, Dr. Johnson argued that there is no evidence that Mr. Johnson had the Haglund deformity on or before the day of his surgery, December 23, and that, even assuming Mr. Johnson had the deformity at that time,

7

there is no evidence that Dr. Johnson knew or should have known of the deformity before or on that date. He contends that he cannot be held liable for concealing the alleged material fact when there is no evidence he had actual or constructive knowledge of the fact, that is, the existence of the deformity. He argues that there is, therefore, no evidence from which a jury could find the essential element of scienter. Mr. Johnson contends, on the other hand, that the following evidence in the record supports a finding that Dr. Johnson had actual or constructive knowledge of the deformity prior to the surgery: (1) Mr. Johnson's pre-surgical x-rays; (2) the examination note from the physician assistant; (3) Dr. Johnson's examination notes; (4) a note by the physician who interpreted Mr. Johnson's MRI; (5) a note by Mr. Johnson's subsequent treating physician; and (6) evidence that Dr. Johnson's treatment plan for Mr. Johnson was allegedly "significantly different" from that of the subsequent treating physician's plan.

With regard to Mr. Johnson's pre-surgical x-rays, he contends that the x-rays show "bumps" on the back of his heel and provide evidence that Dr. Johnson knew or should have known of the Haglund deformity. Mr. Johnson argues that he does not need expert analysis of the x-rays to guide the jury because

it is presented for what it is – either the finder of fact can see bumps on the heel

8

on the images taken December 16, 2008 or they cannot. If at least one bump is there, either it's the Haglund deformity referenced in [Mr. Johnson's] treatment records or it is not, depending on whose presentation of the facts one believes.

For a jury to find, based on the pre-surgical x-rays, that Dr. Johnson knew about the Haglund deformity, either the jury must be able to recognize the condition through a layperson's common understanding and experience or the x-rays must be coupled with expert testimony explaining what they show. We have reviewed the x-rays and have determined that whether they should have put a doctor on notice of a Haglund deformity is not within a layperson's common understanding and experience. Instead, this issue requires expert testimony, which Mr. Johnson did not present. See *Jones v. Finley,* 170 Ga. App. 182, 183-184 (1) (316 SE2d 533) (1984) (Where there was no expert opinion evidence that the defendant doctors' failure to recognize the plaintiff's ankle fracture in x-rays fell below the standard of care, the trial court correctly granted the doctors' motion for summary judgment.).

With regard to the examination notes of the physician assistant and Dr. Johnson, Mr. Johnson argues that the fact that the physician assistant noted a "palpable defect about 3 to 4 cm proximal to the insertion aspect of the Achilles,"

while Dr. Johnson observed a "palpable gap" at a different location, that is, "about 4 to 5 cm above the insertion" of the tendon, shows that Dr. Johnson knew or should have known that there were defects in his tendon and heel, in addition to the acute rupture. However, without expert testimony to support Mr. Johnson's theory that the "defect" mentioned by the physician assistant should have put a doctor on notice of a deformity in addition to the ruptured Achilles tendon, or that it was different than the "palpable gap" mentioned by Dr. Johnson, these notes would not authorize a jury to find that Dr. Johnson knew or should have known of the Haglund deformity before the conclusion of the December 23, 2008 surgery.

With regard to the note by Mr. Johnson's subsequent treating physician, the record shows that that doctor diagnosed Mr. Johnson with a "chronic [A]chilles condition and severe degeneration." This Court has reviewed the note by the physician who interpreted Mr. Johnson's MRI regarding chronic Achilles tendinosis and the note by Mr. Johnson's subsequent treating physician regarding a chronic Achilles condition. We conclude that whether they provide evidence that Dr. Johnson knew or should have known of the Haglund deformity before the conclusion of the December 23, 2008 surgery is a medical question that is not within common understanding of laypeople, and, therefore requires expert opinion evidence. Further,

10

neither of these doctors' notes fulfill Mr. Johnson's need for expert testimony, because neither express an opinion regarding what conclusions Dr. Johnson should have drawn about the Haglund deformity at the relevant time.

Finally, with regard to evidence that Dr. Johnson's recommended course of treatment for Mr. Johnson was significantly different from that of his subsequent treating physician, the record shows that Dr. Johnson suggested an "arthroscopic Haglund excision with retrocalcaneal debridement and then Topaz treatment of his tendon posteriorly," while Mr. Johnson's subsequent treating physician's recommendation included a "left Achilles debridement, left calcaneal exostosectomy, flexor hallucis longus tendon transfer, and reattachment of the [A]chilles using suture anchors." Without expert testimony to explain how different these two recommendations actually are, merely showing that two physicians recommended different sounding courses of treatment outside the scope of common understanding is insufficient evidence to support an allegation of fraud.

This case is similar to the claim for medical fraud in *Roberts v. Nessim*. In that case, the record contained no direct evidence that the defendant doctor made false representations to the patient, and the plaintiff pointed the court to eleven depositions, the defendant's affidavit, and the patient's medical records, but failed to specify how

11

any of the evidence supported the elements of her fraud claim. 297 Ga. App. at 283-284 (1) (b). In the case at bar, Mr. Johnson failed to identify a triable issue where the record contains no evidence that Dr. Johnson concealed a material fact from Mr. Johnson when he had actual or constructive knowledge of that fact. Although Mr. Johnson directed this Court's attention to x-rays and physicians' notes, he failed to accompany this evidence with expert medical testimony to explain that evidence and, thus, failed to support his theory that the elements of fraud, including scienter and intent, are present. Id. Though "scienter in actions based on fraud is [usually] an issue of fact for jury determination," an exception exists in "plain and indisputable cases." (Citation omitted). *Lloyd v. Kramer*, 233 Ga. App. 372, 373 (1) (502 SE2d 632) (1998). This is such a case. Accordingly, we find no error in the trial court's grant of summary judgment to Dr. Johnson on the medical fraud claim.

Furthermore, "[u]nder Georgia law, a plaintiff cannot recover punitive damages when the underlying tort claim fails." (Citation omitted.) *Lewis v. Meredith Corp.,* 293 Ga. App. 747, 750 (5) (667 SE2d 716) (2008).[4] Because Mr. Johnson's fraud

---

[4] "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b).

claim fails for lack of evidence, Dr. Johnson is also entitled to judgment as a matter of law on the claim for punitive damages. Id. Similarly, because Mr. Johnson has not alleged any bad faith in the underlying transaction, apart from Dr. Johnson's alleged fraud, his claim for attorney fees pursuant to OCGA § 13-6-11 fails for the reasons explained above.[5] See *Wright v. Apartment Inv. and Mgmt. Co.*, 315 Ga. App. 587, 591 (1) (a), n. 6 (726 SE2d 779) (2012) (Because the plaintiff's tort claim for fraud failed, its derivative claim for attorney fees also failed.). For the foregoing reasons, summary judgment is affirmed.

*Judgment affirmed. Phipps, C. J., and Branch, J., concur.*

---

[5] "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." OCGA § 13-6-11.