**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

June 28, 2021

# In the Court of Appeals of Georgia

A21A0182. PTI ROYSTON, LLC v. EUBANKS et al.

MARKLE, Judge.

This interlocutory appeal raises the question of whether the general tort statute of repose in OCGA § 51-1-11 (b) (2) bars strict liability claims brought under the Asbestos Claims and Silica Claims Act, OCGA § 51-14-1 et seq. ("the Act"). For the reasons that follow, we conclude that it does. Accordingly, we reverse the trial court's ruling, and remand the case to the trial court to consider whether there was any fraud that would preclude PTI from raising the statute of repose defense.

When considering a motion to dismiss, we construe the pleadings in the light most favorable to the plaintiff, and resolve any doubts in the plaintiff's favor. *Bd. of Regents of the Univ. System of Ga. v. Brooks*, 324 Ga. App. 15, 15-16 (749 SE2d 23) (2013). "When a question of law is at issue, such as whether the statute of [repose]

bars an action, we owe no deference to the trial court's ruling and apply the plain legal error standard of review." (Citation and punctuation omitted.) *Smith v. Brooks*, 354 Ga. App. 78, 79 (840 SE2d 156) (2020).

So viewed, the facts as set forth in the complaint are as follows: Shirley Eubanks used Johnson & Johnson baby powder containing talc daily from 1963 until 2016. In 2016, she was diagnosed with an aggressive form of ovarian cancer, which she contends is due to the asbestos found in talc powder. Three years later, Eubanks and her husband ("the Plaintiffs") sued Johnson & Johnson ("J&J") and PTI Royston, LLC ("PTI"), a company that has manufactured talc for J&J since 2005,[1] alleging three counts of strict liability based on the failure to warn, a design defect, and a manufacturing defect.[2]

---

[1] They also named as defendants Johnson & Johnson Consumer, Inc., Cyprus Amax Minerals Company, and ten John Doe corporations. Only PTI moved to dismiss on the grounds that the statute of repose barred the claims, and thus only PTI appeals from the trial court's order.

[2] In addition to the strict liability counts, the Plaintiffs alleged three counts of negligence, two counts of fraud, and one count each of intentional infliction of emotional distress, civil conspiracy, loss of services, and punitive damages. The motion to dismiss only addressed the strict liability counts; PTI acknowledges that the other counts will go forward. See OCGA § 51-1-11 (c).

2

PTI moved to dismiss the strict liability counts on the ground that the Plaintiffs' claims are barred by the ten-year tort statute of repose in OCGA § 51-1-11 (b) (2). It is undisputed that PTI's first sale of the talc was in 2005, more than ten years before Eubanks learned of her cancer diagnosis and filed suit.

Following a hearing, the trial court denied the motion to dismiss, finding that the plain language of the limitation provision in the Act, as codified in OCGA § 51-14-5, barred the application of the general tort statute of repose.[3] The trial court

[3] The trial court found that the Plaintiffs' claims were not barred as of May 1, 2007, because the limitations period did not begin to run until Shirley had evidence of the disease. On appeal, PTI notes that Shirley's first use of J&J's talc was more than 60 years before she filed suit, and thus, would have been barred before 2007, and even if it was not barred on that date, it was barred as of 2015, 10 years after PTI started manufacturing the talc. The Plaintiffs contend that their claims were not barred as of May 2007 because PTI did not begin to manufacture talc for J&J until 2005, and Shirley was not diagnosed with cancer until 2016, and they assert that every new bottle of talc powder that she purchased would trigger a new limitations period. The trial court did not consider the Plaintiffs' claim that the limitations period began to run anew with every purchase, and the Plaintiffs cite no case law in support of their argument. We note that our Supreme Court has held that the theory of continuing tort does not apply in the medical malpractice context in Georgia. See *Kaminer v. Canas*, 282 Ga. 830, 832-833 (1) (653 SE2d 691) (2007) (initial misdiagnosis is relevant point for purposes of limitations period, and each subsequent misdiagnosis of same illness does not constitute new injury, although other breaches of the standard of care might cause new injury). Nevertheless, for purposes of the motion to dismiss, we need not decide whether the claims were barred ten years after the first use, or as of May 2007, or ten years after PTI was formed because, if the statute of repose applies, the claims would be barred using any of those dates, as the Plaintiffs did not file their complaint until 2019.

granted a certificate of immediate review, and this Court granted PTI's application for interlocutory appeal.

On appeal, PTI argues that the trial court erred in reading the Act's statutory provision as displacing the general tort statute of repose because the plain language of the statute of repose establishes that it applies to *all* strict liability claims against manufacturers, without exception for asbestos claims. It contends that the trial court's interpretation of OCGA § 51-14-5 frustrates the General Assembly's intent as set forth in the Act itself. PTI further argues that the two statutes should not be read in pari materia under our rules of statutory interpretation, and the Act provides for a statute of limitation, not a statute of repose. PTI also asserts that the trial court erred in finding the specific provision in the Act controlled over the more general statute of repose because the provisions in these two statutes do not conflict. Finally, it argues that Plaintiffs' accusation of fraud does not bar it from raising the statute of repose as a defense.

Before we turn to construction of the relevant statutes, we begin with a history of the Act to place this dispute in context. In passing the Act, the General Assembly recognized that "[d]iseases caused by asbestos exposure often have long latency periods[]" and that there was the potential for "massive litigation expense and the

4

crowding of trial dockets," if claimants rushed to file suit in order to avoid statute of limitation issues. OCGA § 51-14-1 (a) (4) (7)-(8). The General Assembly then enacted OCGA § 51-14-5 specifically to establish a limitation period for asbestos-related claims.[4] Under OCGA § 51-14-5,

> *Notwithstanding any other provision of law*, with respect to any asbestos claim or silica claim not barred as of May 1, 2007, *the limitations period shall not begin to run* until the exposed person . . . obtains, or through the exercise of reasonable diligence should have obtained, prima-facie evidence of physical impairment[.[5]]

(Emphasis supplied.)

At issue here is the interplay between this limitation provision in the Act, OCGA § 51-14-5, and the general tort statute of repose in OCGA § 51-1-11 (b) (2), which provides that "[n]o action shall be commenced [related to manufacturer liability] with respect to an injury after ten years from the date of the first sale for use

---

[4] There is no dispute that this provision applies to asbestos claims such as the ones here. See OCGA § 51-14-3 (2) (A) (defining asbestos claims as "any claim, wherever or whenever made, for damages . . . or other relief arising out of, based on, or in any way related to the health effects of exposure to asbestos[.]"); see also OCGA § 51-14-12 (a) (the Act applies to any asbestos claim that accrued before April 12, 2005 or that would accrue on or after May 1, 2007).

[5] The defendants did not seek dismissal based on any alleged failure to obtain such prima facie evidence.

5

or consumption of the personal property causing or otherwise bringing about the injury."

1. Statutory construction.

PTI argues that the strict liability claims are barred by the general tort statute of repose in OCGA § 51-1-11 (b) (2), which applies to all strict liability claims, whereas the language in OCGA § 51-14-5 provides only a statute of limitation.[6] Applying our rules of statutory construction, and given the ordinary meaning of the language in both statutes, and the purposes set forth in the Act itself, we agree.

The application of the statute of repose to claims raised under the Act is an issue of first impression in Georgia, and the answer turns on questions of statutory construction. Our

> interpretation and application of statutory language is guided by the following principles: A statute draws its meaning, of course, from its text. Under our well-established rules of statutory construction, we

---

[6] Although a statute of repose issue came before this Court in *Toole v. Ga.-Pacific*, Case No. A10A2179, 2011WL7938847, at \*5-7 (5) (2011), an unpublished decision, the opinion contains no discussion of the Act or strict liability claims arising under the Act, nor does it discuss how the general statute of repose and the Act's limitation period interact. In another case, we noted that the plaintiff's asbestos-related negligence claims were not barred by the statute of repose that applied to strict liability claims. *Fletcher v. Water Applications Distribution Group*, 333 Ga. App. 693, 696 n. 1 (773 SE2d 859) (2015).

presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its "plain and ordinary meaning," we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Though we may review the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it, where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends.

*Amazing Amusements Group v. Wilson*, 353 Ga. App. 256, 257-258 (835 SE2d 781) (2019); see also *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013). "But when the language of a statute or regulation is not obvious on its face, we should employ other tools of construction to interpret it and resolve its meaning." (Citation and punctuation omitted.) *Premier Health Care Investments v. UHS of Anchor*, 310 Ga. 32, 39 (3) (b) (849 SE2d 441) (2020). Those rules require that "we give due weight and meaning to all of the words of the statute, and we are not authorized to disregard any of the words of the statute in question unless the failure to do so would lead to an absurdity manifestly not intended by the legislature." (Citation and punctuation omitted.) *Ga. Lottery Corp. v. Sumner*, 242 Ga. App. 758, 760 (2) (529 SE2d 925) (2000). In addition, "[l]anguage in one part of the statute

7

must be construed in light of the legislature's intent as found in the whole statute."

*Echols v. Thomas*, 265 Ga. 474, 475 (458 SE2d 100) (1995); *Fielder v. Johnson*, 333 Ga. App. 658, 661 (773 SE2d 831) (2015) ("The cardinal rule of statutory construction is to seek the intent of the legislature, and language in one part of a statute must be construed in the light of the legislative intent as found in the statute as a whole.") (citation and punctuation omitted).

Here, although the "notwithstanding" language is clear, we conclude that the term to which it applies – "limitations period" – is ambiguous. See *Cochran v. Bowers*, 274 Ga. App. 449, 452-453 (1) (617 SE2d 563) (2005) (ambiguous phrase "period of limitation" in medical malpractice statute encompassed both the statute of limitation and statute of repose given the legislative intent). We thus turn to our rules of statutory construction. We begin with the ordinary definitions of the relevant statutory language. A statute of limitation creates "a time limit for suing in a civil case, based on the date when the claim accrued." Black's Law Dictionary (11th ed. 2019). A claim accrues "when the injury occurred or was discovered." Id. Thus, for a statute of limitation period to begin, a claim must actually exist, as shown by evidence of a physical impairment. See *CTS Corp. v. Waldburger*, 573 U. S. 1, 15-16 (II) (C) (134 SCt 2175, 189 LE2d 62) (2014), superceded by statute as recognized in

8

*In re Dow Corning Corp. v. DCC Litigation Facility, Inc.*, 778 F3d 545, 552 (IV), n. 2 (6th Cir. 2015) ("the definition of the 'applicable limitations period' presupposes that 'a covered civil action' exists.") (citation and punctuation omitted). In contrast, the statute of repose is "not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered." 54 CJS, Limitations of Actions § 6 (2021). As our Supreme Court explained,

> A statute of limitations normally governs the time within which legal proceedings must be commenced after the cause of action accrues. A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action. . . . A statute of repose stands as an unyielding barrier to a plaintiff's right of action. The statute of repose is absolute; the bar of the statute of limitation is contingent. The statute of repose destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists.

(Citations and punctuation omitted.) *Wright v. Robinson*, 262 Ga. 844, 845 (1) (426 SE2d 870) (1993); see also *Simmons v. Sonyika*, 279 Ga. 378, 379 (614 SE2d 27) (2005); *Howell v. Bates*, 350 Ga. App. 708, 712-713 (2) (830 SE2d 250) (2019).

Applying these definitions and distinctions to the relevant statutes, OCGA § 51-14-5 provides that the "limitations period" begins to run once there is evidence

of a physical impairment; in other words, when the claim accrued. In contrast, OCGA § 51-1-11 (b) (2) speaks of the time when an action may no longer be *commenced*, regardless of whether the claim has already accrued, and that time is triggered by the first sale or use of the product. Thus, the term "limitations period" in OCGA § 51-14-5 refers to the accrual of the cause of action, and, as such, applies only to the statute of limitation. As a result, we must conclude that the "notwithstanding any other provision of law" language in OCGA § 51-14-5 applies only to the statute of limitation and does not prevent the application of the statute of repose to strict liability claims under the Act. *Simmons*, 279 Ga. at 379-380 (use of the term "in no event," and reference to "limitation" do not overcome statute of repose).[7]

This interpretation is supported by the General Assembly's stated purpose to address concerns about "statutes of limitations" and to "toll[] statutes of limitations."

---

[7] The Plaintiffs contend, however, that the statute of repose does not apply because they brought their claims under the Act and not under OCGA § 51-1-11. We are not persuaded. Both OCGA §§ 51-1-11 and 51-14-5 appear in the code sections governing torts. *Gay v. Owens*, 292 Ga. 480, 482 (1) (738 SE2d 614) (2013) ("Statutes are not to be construed in a vacuum, but in relation to other statutes of which they are a part.") (citation and punctuation omitted). Nothing in the Act created a new cause of action; rather, the Act set out procedural standards for bringing claims arising from asbestos exposure. See OCGA §§ 51-14-4 (requiring prima facie evidence of physical impairment); 51-14-6 (requiring the filing of a medical affidavit); and 51-14-9 (setting jurisdiction and venue).

OCGA § 51-14-1 (7), (11); see also *Concerned Citizens of Willacoochee v. City of Willacoochee,* 285 Ga. 625, 626 (680 SE2d 846) (2009) (looking to preamble to support plain meaning of the statute). But statutes of repose are not subject to tolling, and therefore, the General Assembly could not have intended this provision to circumvent it. *Simmons*, 279 Ga. at 380.

Moreover, it is well settled that we presume that the legislature enacts all statutes with knowledge of the existing laws. *Wright*, 262 Ga. at 846 (1); *Glass v. Faircloth*, 354 Ga. App. 326, 331 (2) (840 SE2d 724) (2020). At the time the General Assembly enacted § 51-14-5, the general tort statute of repose was already codified. If the General Assembly wanted to eliminate the statute of repose for claims brought under the Act, it could have included specific language as it has done in other statutes. See, e.g., OCGA § 9-3-33.1 (a) (2) ("Notwithstanding [the two-year statute of limitation for personal injuries] . . . any civil action for recovery of damages suffered as a result of childhood sexual abuse committed before July 1, 2015, shall be commenced on or before the date the plaintiff attains the age of 23 years."); *Doe v. Saint Joseph's Catholic Church*, 357 Ga. App. 710, 712 (1) (a) (850 SE2d 267) (2020) (discussing OCGA § 9-3-33.1 (a) (2) as a statute of repose); OCGA § 9-3-73 (b) (c), (d) (setting out statute of limitation and statute of repose separately); OCGA

11

§§ 9-3-71; 9-3-73 (setting out time periods and stating that one subsection creates a statute of limitation and another subsection creates a statute of repose). But it did not do so.

Our interpretation also gives effect to both statutory provisions. See *Synovus Bank v. Kelley*, 309 Ga. 654, 658 (1) (847 SE2d 592) (2020) (considering the plain language in two sections of the same title in the Georgia Code and holding that the plain language gives effect to both provisions). And our construction is consistent with the General Assembly's intent in enacting the general tort statute of repose. See *Chrysler Corp. v. Batten*, 264 Ga. 723, 725 (2) (450 SE2d 208) (1994) (the purpose of the statute of repose was "to address problems generated by the open-ended liability of manufacturers so as to eliminate stale claims and stabilize products liability underwriting."). Notably, we have held that a statute of repose may bar a claim that is otherwise filed within the statute of limitation. *Lyon v. Schramm*, 291 Ga. App. 48, 49-50 (661 SE2d 178) (2008) ("The statute of repose can bar a claim before the claim accrues, in other words, even before the injury occurs. As the Supreme Court has said, the legislature may conclude that the time may arrive when past transgressions are no longer actionable.") (citations and punctuation omitted). Indeed, the statute of repose can serve, as it does here, as an "upper time limit" in

which a claim may be brought, regardless of the limitation period. See *Kitchens v. Brusman*, 280 Ga. App. 163, 166 (2) (633 SE2d 585) (2006) (even if statute of limitation has tolled, statute of repose exists as a time limit); see also *Osburn v. Goldman*, 269 Ga. App. 303, 304 (1) (a) (603 SE2d 695) (2004) (suit brought within statute of limitation but outside statute of repose was barred); *Esener v. Kinsey*, 240 Ga. App. 21, 22-23 (522 SE2d 522) (1999) (statute of limitation tolled but statute of repose could still bar suit). Thus, construing the statutes in this manner gives effect to both provisions.

Moreover, the General Assembly expressly noted that the Act was similar to legislation passed in other states designed to establish medical criteria governing asbestos claims and "*toll[ing] statutes of limitations*." OCGA § 51-14-1 (a) (11).[8] In Ohio, the similar language in the limitation statute did not preclude application of the statute of repose. See *Mastellone v. Lightening Rod Mut. Ins. Co.*, 175 Ohio App.3d 23, 31 (II) (C) 21, n. 2 (884 NE2d 1130) (2008); Ohio Rev. Code Ann. §§ 2305.10 (C) (1), overruled on other grounds by *Groch v. Gen. Motors Corp.*, 117 Ohio St. 3d 192 (883 NE2d 377) (2008) (retroactive application unconstitutional); 2125.02 (D)

---

[8] The South Carolina statutes mirror Georgia's with one relevant notable exception; there is no statute of repose applicable to suits brought based on defective products. See S. C. Code Ann. §§ 44-135-20; 44-135-110.

(2) (a). Instead, the Ohio statutes contain a separate provision that expressly excludes asbestos cases from the statute of repose. See Ohio Rev. Code Ann. § 2125.02 (2) (g). Texas has enacted a similar statutory scheme. See Texas Civ. Prac. & Rem. Code Ann. §§ 16.0031; 16.012 (d) (3). In Tennessee, the statute of repose bars asbestos claims despite the limitation provision. See *Wyatt v. A-Best Products Co.*, 924 SW2d 98, 107 (IV) (Tenn. Ct. App. 1995). And in Florida, the statute of repose expressly provides that it does not apply if the plaintiff used the product within the repose period but the injury did not manifest until after the period expired. Fla. Stat. § 95.031 (3) (c); see generally Lisa K. Mehs, "Asbestos Litigation and Statutes of Repose: The Application of the Discovery Rule in the Eighth Circuit Allows Plaintiffs to Breath Easier," 24 Creighton L. Rev. 965 (1992). Likewise, in Kansas, the statute of repose expressly states that the period does not apply to latent disease until such time as the plaintiff could have learned of the diagnosis. Kan. Stat. Ann. § 60-3303 (d) (1).

Given our General Assembly's acknowledgment that the Asbestos Act was similar to the statutes enacted in Ohio, Tennessee, Texas, Florida, and Kansas, we are further persuaded that the statute of repose remains applicable to asbestos cases. Although these states took extra measures to carve out an exception from the repose

period, our General Assembly took no such action.[9] And we decline to carve out any such exception in that absence. *Chase v. State*, 285 Ga. 693, 698 (2) (681 SE2d 116) (2009) (Courts may not usurp the General Assembly's legislative role and legislate by judicial fiat by engrafting language from one Code subsection onto another.); *Groover v. Johnson Controls World Svc.*, 241 Ga. App. 791, 793 (527 SE2d 639) (2000) (Courts may not "rewrite a statute under the guise of interpreting it." Such changes must be made by the legislature, "not by judicial fiat.").

Nor does our interpretation render the Act toothless; by passing OCGA § 51-14-5, the General Assembly expanded the time in which an action could accrue given the long latency periods for asbestos diseases, and thus enabled patients to bring claims well beyond the original applicable statute of limitation. See OCGA § 9-3-33 (setting two-year limitation period for injuries to person); *Daniel v. American Optical Corp.*, 251 Ga. 166, 167 (1) (304 SE2d 383) (1983) (limitation period for injuries to

---

[9] Other states have also carved out exceptions to prevent the statute of repose from barring asbestos claims. See, e. g., *Ott v. Alliedsignal*, 827 NE2d 1144, 1148 (Ind. Ct. App. 2005) (applying statute of repose to asbestos claim where state enacted a special limitation period for asbestos claims); Conn. Gen. Stat. Ann. § 52-577a (e) (expressly expanding the statute of repose for asbestos claims); Ryan Kiwala, "Statutes of Repose an Obstacle to Toxic Tort Recovery in Many States," 37 No. 15 Westlaw Journal Asbestos 1 (2015); Joseph Sanders, "Medical Criteria Acts: State Statutory Attempts to Control the Asbestos Litigation," 37 Sw U. L. Rev. 671, 675-676 (I) (C) (2008).

15

person applied to strict liability claims). The fact that the statute of repose will create a limit on that time frame still allows for the latency of a diagnosis. And reading § 51-14-5 in this manner does not leave plaintiffs without a remedy. Nothing in OCGA § 51-1-11 (b) imposes a statute of repose on their claims for negligence; it bars only the claims raised under a theory of strict liability. See also OCGA § 51-1-11 (c) (ten-year period does not apply to negligence claims arising from disease or death).

If this interpretation is not what the General Assembly intended, the remedy lies solely with the legislature; it is not for this Court to correct it. *Chase*, 285 Ga. at 698 (2); *Groover*, 241 Ga. App. at 793. Accordingly, the language "notwithstanding any other provision of law" in OCGA § 51-14-5 refers to the statute of limitation, and does not bar the application of the statute of repose to asbestos claims. As such, the trial court erred in its interpretation of this statutory provision, and we reverse.

2. Having found that the strict liability claims are subject to the statute of repose, we turn to whether PTI is estopped from raising that defense due to fraud.

Although it is well-settled that a statute of repose cannot be tolled, there are "narrow circumstances [in which] a defendant may be equitably estopped from raising the statute of repose as a defense." *Balotin v. Simpson*, 286 Ga. App. 772, 773 (650 SE2d 253) (2007); see also *Rosenberg v. Falling Water, Inc.*, 289 Ga. 57, 60-61 (709

16

SE2d 227) (2011) (discussing context in which doctrine of equitable estoppel can be applied with respect to statutes of repose); *Craven v. Lowndes County Hosp. Auth.*, 263 Ga. 657, 660 (3) (437 SE2d 308) (1993); *Wilhelm v. Houston County*, 310 Ga. App. 506, 509 (1) (c) (713 SE2d 660) (2011); *Esener*, 240 Ga. App. at 23.

> To apply the estoppel doctrine, we look to whether
>
> the evidence of defendant's fraud or other conduct on which the plaintiff reasonably relied in forbearing the bringing of a lawsuit is found by the [trier of fact] to exist, then the defendant, under the doctrine of equitable estoppel, is estopped from raising the defense of the statute of ultimate repose.

*Esener*, 240 Ga. App. at 23; see also *Wilhelm*, 310 Ga. App. at 509 (1) (c) ("[A] defendant may be equitably estopped from raising the defense of the statute of repose if the plaintiff reasonably relied on a fraudulent act or statement by the defendant that occurred after the plaintiff's injury accrued and, as a result of that fraud, the plaintiff did not file suit until after the repose period expired.") (emphasis omitted).

Here, the Plaintiffs alleged that PTI falsely represented that talc was safe and asbestos free, and it concealed studies showing otherwise. They further alleged that PTI acted with intent to deceive and mislead users. The trial court did not consider whether the Plaintiffs' allegations of fraud were a sufficient basis to preclude PTI

17

from raising the statute of repose defense. Therefore, we remand this case to the trial court to consider this issue in the first instance. See *Piedmont Hosp., Inc. v. D. M.*, 335 Ga. App. 442, 449 (3) (779 SE2d 36) (2015).

*Judgment reversed and case remanded with direction. Barnes, P. J., and Gobeil, J., concur.*