**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 13, 2022**

# In the Court of Appeals of Georgia

A22A0242. SMITH v. KAYFAN.

REESE, Judge.

Joyce Ann Smith appeals from an order of the State Court of Bibb County, which granted summary judgment in favor of Gloria Kayfan, D. O., on the ground that Smith's medical-malpractice action was barred by the applicable five-year statute of repose.[1] For the reasons set forth infra, we affirm.

Viewed in the light most favorable to Smith, as the nonmoving party below,[2] the record shows the following. On October 5, 2005, Smith presented to the emergency department at Navicent Health following a possible sexual assault. Smith testified that she had been up for three or four days smoking crack cocaine when she

---

[1] See OCGA § 9-3-71 (b).

[2] See *Antley v. Small*, 360 Ga. App. 617, 619 (859 SE2d 881) (2021).

fell asleep in an abandoned house. She woke up and discovered that her pants had been pulled down to her ankles and two or three guys were walking around the house. Smith called the police, who brought her to the emergency department.

Dr. Kayfan, who is board-certified in emergency medicine, noted that every time she attempted to speak to Smith, Smith either fell asleep or was incoherent. Smith testified that she was "dizzy and out of it[,]" and could not comprehend what was going on.

Kayfan tried to perform a sexual assault kit on Smith, but Smith refused to allow Kayfan to examine her, physically pushing Kayfan's hand away. Smith denied having been sexually assaulted. Dr. Kayfan decided to discharge Smith and referred her to the outpatient gynecology clinic for follow-up care.

After Smith refused to leave the hospital and requested to detox from crack cocaine, Dr. Kayfan again met with Smith. Noting a scratch on Smith's nose, as well as the original report of an assault, Kayfan ordered a head CT scan. Kayfan also asked a mental health counselor to evaluate Smith.

The radiologist reported that the CT scan did not show evidence of an intracranial hemorrhage, but that the "findings [were] suggestive of a pituitary mass."

The radiologist recommended further evaluation and an MRI and noted in the report that "[f]indings were called to Dr. Kayfan on [October 5] at 2:34 p.m."

Smith testified that she did not remember anyone discussing with her the results of the CT scan. The medical record contains Dr. Kayfan's handwritten note, "CT" with an arrow to the acronym "NAP," which Kayfan testified stood for "no acute process." Kayfan further testified that she did not remember the day in question, but that it was her practice to make a note like that when she discussed CT findings with a patient.

At this point, the records indicated that a mental health counselor was evaluating Smith, and a transfer to Central State Hospital, an inpatient psychiatric hospital, was underway. Kayfan testified that Smith's medical records, including the CT scan result, were sent along with her.

Smith testified that she stayed the night at Central State Hospital. The record does not indicate that she had any further interaction with Dr. Kayfan after her discharge from Navicent in 2006. The next time Smith presented to the Navicent emergency department was in May 2016, which, according to Smith, was when she first learned of the pituitary mass.

Smith filed her medical malpractice action against Dr. Kayfan in May 2018,[3] alleging that Kayfan negligently failed to communicate the abnormal findings in the CT scan. This negligence, Smith alleged, "resulted in a failure to diagnose and treat [Smith's] pituitary mass for a period of over ten years, during which period [Kayfan] fraudulently concealed the results of the CT brain scan without contrast from [Smith]." In her amended complaint, Smith added that Kayfan "knowingly withheld" the results of the CT scan from Smith, and "knowingly chose not to disclose to [Smith] that she required further medical treatment, preventing [Smith] from discovering that she suffered from a pituitary mass that required further medical treatment." Smith alleged further that "Kayfan knowingly chose not to refer [Smith] to any other medical provider for further treatment of the pituitary mass and chose not to provide any information about the pituitary mass to any other medical provider of [Smith]." Smith asserted that these actions constituted fraud, which prevented her from discovering and seeking treatment for the pituitary mass until May 2016.

---

[3] Smith also sued Logos Emergency Specialists, LLC ("Logos"), and the Medical Center of Central Georgia, Inc. ("MCCG"). In September 2018, the trial court entered a consent order dismissing Logos with prejudice, and an order granting summary judgment in favor of MCCG. Smith does not challenge either of these orders.

The trial court granted Kayfan's motion for summary judgment, finding that the record clearly reflected that the date of treatment was October 2005 and that the action was not filed until May 2018. The trial court concluded that Kayfan had failed to survive the statute of repose by presenting evidence of medical fraud. This appeal followed.

> Summary judgment is proper when the record reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. On appeal from the grant of summary judgment, we apply a de novo standard of review and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[4]

With these guiding principles in mind, we turn now to Smith's claim of error.

In related arguments, Smith contends that the trial court erred in granting summary judgment because the evidence was sufficient to show that Dr. Kayfan was equitably estopped from asserting the statute of repose.

OCGA § 9-3-71 (a) requires that an action for medical malpractice be brought within two years from the date of injury. Under OCGA § 9-3-71 (b), "in no event may

---

[4] *Southern States Chem. v. Tampa Tank & Welding*, 359 Ga. App. 731, 737 (2) (858 SE2d 72) (2021) (citations omitted).

5

an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred."[5] Thus, "Subsection (a) of this Code section is intended to create a two-year statute of limitations. Subsection (b) of this Code section is intended to create a five-year statute of ultimate repose and abrogation."[6]

> The distinction between the statute of limitation and the statute of repose in OCGA § 9-3-71 is clear. A statute of limitation is a procedural rule limiting the time in which a party may bring an action for a right which has already accrued. A statute of ultimate repose delineates a time period in which a right may accrue. If the injury occurs outside that period, it is not actionable. A statute of repose stands as an unyielding barrier to a plaintiff's right of action. The statute of repose is absolute; the bar of the statute of limitation is contingent. The statute of repose destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists.[7]

---

[5] OCGA § 9-3-71 (b).

[6] OCGA § 9-3-71 (c).

[7] *Simmons v. Sonyika*, 279 Ga. 378, 379 (614 SE2d 27) (2005) (citations and punctuation omitted).

Although the statute provides a bright-line rule that the statute of ultimate repose cannot be tolled,[8] "in certain narrow circumstances, a defendant may be equitably estopped from raising the statute of repose as a defense. In order for this to apply, however, a plaintiff must show fraud by offering evidence of a known failure to reveal negligence."[9]

Although Smith argues that equitable estoppel does not require an act of fraud separate from the underlying negligence, we have held that "a defendant may be equitably estopped from raising the defense of the statute of repose if the plaintiff reasonably relied on a fraudulent act or statement by the defendant that occurred *after* the plaintiff's injury accrued and, as a result of that fraud, the plaintiff did not file suit until after the repose period expired."[10]

---

[8] See *Simmons*, 279 Ga. at 380.

[9] *Balotin v. Simpson*, 286 Ga. App. 772, 773 (650 SE2d 253) (2007) (punctuation and footnotes omitted).

[10] *Wilhelm v. Houston County*, 310 Ga. App. 506, 509 (1) (c) (713 SE2d 660) (2011).

7

In other words, there must be a separate and independent act of fraud.[11] "To make out a claim of equitable estoppel, the plaintiff must show fraud by offering evidence of a known failure to reveal negligence."[12] Nothing in the record supports a finding that Dr. Kayfan committed a separate act of fraud after her alleged failure to communicate the CT scan results to Smith, or that Kayfan intentionally intended to induce Smith to act or refrain from acting.[13] Thus, because the injury occurred outside the absolute five-year statute of repose, it is not actionable.[14]

*Judgment affirmed. Doyle, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[11] See *Antley*, 360 Ga. App. at 621 (2) (considering when a statute of limitation is tolled for fraud).

[12] *Craven v. Lowndes County Hosp. Auth.*, 263 Ga. 657, 659 (3) (437 SE2d 308) (1993).

[13] See *Johnson v. Johnson*, 323 Ga. App. 836, 838-839 (747 SE2d 518) (2013).

[14] See *Simmons*, 279 Ga. at 379.